## STERLING *v.* FRICK ET AL.

[No. 21,168. Filed November 24, 1908. Rehearing denied February 25, 1909.]

1. EVIDENCE.—*Cost of "Good" Road.—Highways.—Establishment.*— In a highway establishment proceeding, it is not erroneous to exclude the question, "How much would it cost to make a good road through the timber?" such question being too indefinite. p. 713.

2. SAME.—*Cost Necessary to Open Highway.*—In a highway establishment case, it is proper to inquire as to the cost necessary to put the proposed road in such passable condition as would be required of the road district. p. 713.

3. SAME.—*Utility of Highway.—Other Highways.—Taxable Property.—Rate of Taxation.—Condition of Road Fund.—Persons Liable to Service.*—In a highway establishment case, evidence of the number of miles of public highway in the township, the amount of taxable property in the township, the rate of taxation

for road purposes in the township, the amount of road fund in the township and the number of persons liable to work on the highways, is immaterial. p. 713.

4. EVIDENCE.—*Utility of Highway.—Location.—Accessibility.*—In determining the public utility of a proposed highway, evidence of the location thereof, its proximity to other highways, and its accessibility to the inhabitants, is admissible. p. 714.

5. HIGHWAYS.— *Public Utility.— Elements.*— The controlling inquiries, in determining whether a proposed public highway is of public utility, are do the people need the road, and will the need justify the cost? p. 714.

6. EVIDENCE.—*Striking Out Answers as Not Responsive.—Highways.*—Where remonstrant, in a highway establishment case, propounded the question, "The other conditions surrounding this [proposed highway], going to show whether this road is of public utility, you do not know, do you, these other conditions, except as along the line of road you do not know anything about?" and the witness answered, "It looked like the road would be of public utility," the Supreme Court will not consider the ruling of the trial court, in refusing to strike out such answer as irresponsive, as reversible error. p. 714.

7. TRIAL.—*Instructions.—Definiteness.—Highways.—Public Utility.*—*"Useful."*—An instruction that if the proposed highway would be a "useful" road, and the usefulness should be of a greater degree than the cost of the road, such proposed highway would be of public utility, if standing alone, would be too indefinite. p. 715.

8. SAME.—*Instructions.—How Considered.*—Instructions must be considered as a whole, and, when so considered, if they correctly state the law, reversible error is not committed, though one or more considered separately should be technically incorrect. p. 715.

9. SAME.—*Instructions.—Curing.—Highways.—Public Utility.*—An instruction that if the usefulness of a proposed highway would exceed the cost of such road it would be of public utility, is rendered harmless by other instructions distinguishing between private convenience or utility, and public utility. p. 716.

10. SAME.— *Instructions.— Highways.— Damages.*—An instruction that if the benefits to the land, from the construction of the proposed highway, are equal to the damages, the verdict should be against remonstrant on the question of damages, is not harmful because of failing to include the cost of building fences occasioned thereby, where another instruction required the jury to determine the damages, "by reason of facts alleged in his remonstrance," from all of the evidence, one ground of the remonstrance being "that it will be necessary to build and maintain 360 rods of fence where there is now no necessity for any." p. 716.

11. TRIAL.—*Instructions.*—*Highways.*—*Reviewers' Reports.*—*Consideration of, on Appeal.*—*Statutes.*—*Evidence.*—An instruction, in a highway establishment case, that reviewers were appointed by the board of commissioners, who reported in favor of the public utility of such highway, and assessed damages in the sum of $100 in favor of remonstrant, is not erroneous on the ground that the trial in the circuit court is *de novo*, since, by §7793 Burns 1908, Acts 1905, pp. 521, 579, §123, "every report made to the board by viewers or reviewers * * * shall be considered in evidence on such appeal." p. 717.

12. HIGHWAYS. — *Remonstrances.* —*Damages.* — *Obstruction of Drains.*—*Evidence.*—Where a remonstrance for damages to a proposed highway fails to show that a drain would be obstructed by the opening of such highway, evidence of such damage is inadmissible. p. 718.

From Carroll Circuit Court; *James P. Wason*, Judge.

Highway proceeding by Wesley A. Frick and others, against which James P. Sterling remonstrates. From a judgment for petitioners, remonstrant appeals. *Affirmed.*

*Edward E. Pruitt* and *John H. Gould*, for appellant.
*Leander D. Boyd* and *George W. Julien*, for appellees.

HADLEY, J.—In a proceeding to establish a new highway in Carroll county, viewers reported that the proposed road would be of public utility, whereupon appellant and others filed a remonstrance against the public utility thereof. Reviewers were appointed, and they, having reported adversely to the remonstrators, the board of commissioners entered an order establishing the highway as prayed. Appellant, alone, appealed to the circuit court. In the latter court, the jury returned a verdict for appellees, and appellant's motion for a new trial having been overruled, he appeals.

During the progress of the trial, appellant, in the direct examination of one of his witnesses, inquired: "How much would it cost to put the proposed highway simply through the woods, in a passable condition?" The witness answered that it would cost not less than $200 to put it through the woods; that is, to do such work on it as the road district would do, not counting a removal of the timber, that the

landowners would be expected to do. He, also, in answer to the question: ''What would be necessary to make it a good passable road through the timber?'' stated that it would require drainage, a grade that would take the water off the roadway, and the removal of all the timber.

Appellant then propounded to the witness the following question: ''How much would it cost to make a good road through the timber?'' The ruling of the court, in excluding the answer to this question, presents the first question we are called upon to decide. The cost of a good road would depend on the kind of a good road that was meant, whether only a well-cleared road, or simply well-graded, or graded and graveled, as are the roads with which the proposed highway connects at both ends. The question called for an indefinite answer that would have been of no assistance to the jury. Besides, the witness had previously testified as to the cost necessary to put the road in such passable condition as would be required of the road district. That was as far as the inquiry was material. If the public later on shall want a better road than the law requires the road district to furnish, resort may be had to special proceedings. The answer was properly excluded.

Answers were excluded to the following questions propounded by appellant to his witness: ''How many miles of public highway are there, at this time, in Jackson township?'' ''What is the amount of taxable property in Jackson township, subject to road taxes?'' ''What is the rate of taxation for road purposes in Jackson township?'' ''What is the amount of the road fund for Jackson township for the year 1907?'' ''How many male persons are there in road district No. 3, of Jackson township, liable to work on the public highways?'' No matter what the answer might have been to any or all of the foregoing interrogatories, no light would have been thrown upon the question of public utility of the proposed highway.

There may be many miles of highway in a township, yet if not distributed in such a way as to furnish the public a reasonable route of travel to the county seat, to the markets, to church, and such other places as citizens usually need and desire frequently to visit, additional highways may be established. Because some parts of the township may have more roads than they need, is no reason why another part should have less than it needs. In determining the question of public utility (among a number of other facts), it is proper enough to consider the location of established ways—their proximity to the proposed new one, and their accessibility to the inhabitants; but the number of miles in the township, the taxable property, the rate of taxation, the amount of the road fund, and the number of road hands in the district, do not in any way affect the question of utility to a community not reasonably provided with roads. The exclusion of answers to the above questions was not error. *Opp* v. *Timmons* (1898), 149 Ind. 236; *Speck* v. *Kenoyer* (1905), 164 Ind. 431.

The controlling inquiries in such cases are, do the people need the road, and is the need sufficiently urgent to justify the cost?"

In the cross-examination, a witness had testified that he had viewed the proposed way from one end to the other, and had spoken concerning the physical condition of the route; whereupon, appellant's attorneys propounded the following interrogatory: "The other conditions surrounding this, going to show whether this road is of public utility, you do not know, do you, these other conditions, except as along the line of the road you do not know anything about?" To this question, the witness answered: "It looked like the road would be of public utility." The court overruled appellant's motion to strike out the answer as not responsive. Just what answer counsel expected, or what should be regarded as responsive to the question, as put, is not clear, and we are unwilling to

disturb the judgment of the court, whose opportunity for arriving at a correct understanding of the question was better than ours.

Appellant assails the fourth instruction given to the jury on the court's own motion. It was to the effect that, in deciding the question of public utility, the jury should 7. determine, from the evidence given relative to that issue, whether the proposed road, if established, would be a useful road, and if the finding should be that the road would be useful, and that such usefulness shall be to a greater degree than the cost of the road, then the finding on the question of public utility should be for the petitioners. But, on the other hand, if the finding should be that the cost of the road would be as great, or greater, than the value of the benefits derived from the established road, then the finding should be for the remonstrator.

Appellant argues that the term "useful," as used in the instruction, is, properly, as applicable to the private citizen as to the public, and that the fault of the instruction lies in its natural tendency to lead the jury to believe that if they found that the proposed road would be useful to a citizen, or to a very small number of citizens, and that the usefulness to them, as individuals, would exceed the cost of the road, the finding should be for the existence of public utility, without reference to its effect upon public interests.

Standing alone, the instruction would be too narrow and indefinite in this respect; but it is a familiar rule that instructions must be considered with reference to each 8. other, and as a body, and if, as a whole, they correctly state the law, it will not be deemed reversible error if one or more, considered apart and of themselves, appear inadequate. *Eacock* v. *State* (1907), 169 Ind. 488; *Rains* v. *State* (1899), 152 Ind. 69.

As touching the same point, the court in other instructions, notably in number seven, given upon the request of

appellant, directed the jury "that, as contradistinguished from public utility, mere private convenience or private utility alone falls short of what the law recognizes as of public utility. And, in the solution of the question here as to the alleged public utility of the proposed highway, it will be proper for you to consider the following questions: Would the proposed road lead to any market place, town, post-office, church or school? Would the cost of building and keeping in repair a bridge and culverts on the road, if necessary to the road, and the cost of putting the road in a passable condition, exceed any benefits the road might be to the public? Is the public now supplied with sufficient other public highways in the neighborhood, leading to towns, market places, post-offices, schools and churches? Would the proposed road only be a convenience to a very few persons, who already have private ways to public highways or roads? If, upon a careful consideration of these questions, you are not convinced by a fair preponderance of the evidence that the proposed road would be of public utility, then it will be your duty to find and return a verdict for the remonstrator."

At least two other instructions, in like vein and effect, were given, and we do not see how the jury could have been misled by the instructions, as a whole, into believing that it was proper to ground public utility upon private benefits.

Further complaint is made of the following language in the sixth instruction given: "And if you find from the evidence upon this subject that the benefits to said land are equal to, or are greater than, the damages to said land by the construction of said road, then you should find against the remonstrant on the question of damages." "It shuts the door," appellant avers, "to any consideration whatever of the cost of removing and rebuilding fences." There is no force in this complaint when the body of the instructions is considered.

In instruction eight the court directed the jury that they

must determine, from a consideration of all the evidence, the amount of appellant's damages "by reason of the facts alleged in his remonstrance," and one item of the remonstrance is "that it will be necessary to build and maintain 360 rods of fence where there is now no necessity for any."

There are many other exceptions reserved relating to the instruction and the introduction of the evidence, but no other is urged, and we have been unable, upon examination, to find in them any prejudicial error.

Judgment affirmed.

## On Petition for Rehearing.

Hadley, J.—Counsel for appellant cynically complain that in the disposition of this case we left unconsidered two "very important questions," and invoke in behalf of their client article 7, §5, of the state Constitution.

First. Instruction one, given to the jury, is claimed to be erroneous. The court, in stating to the jury the issues, called attention to the fact that reviewers were appointed, who filed their report in favor of the utility of the road, and assessed damages in favor of the remonstrator, James P. Sterling, in the sum of $100, which amount Sterling, in a second remonstrance, claims is unreasonably small, and that he will be damaged five times this amount, and in no way benefited by the proposed highway. Appellant contends that this instruction is erroneous and harmful because, as the case must be tried de novo on appeal, the reports before the commissioners could not be considered by the jury for any purpose, and relies on Coyner v. Boyd (1876), 55 Ind. 166, Freck v. Christian (1876), 55 Ind. 320, and Turley v. Oldham (1879), 68 Ind. 114. The force of these decisions has been destroyed by legislative enactment (Acts 1905, pp. 521, 579, §123, §7793 Burns 1908), which provides as follows: "Such appeal shall be tried de novo, and may be had as to any issue [tried], or that might have been tried, before the county board; but

every report made to the board by viewers or reviewers or by any committee, body or officer, under the provisions of this act, shall be considered in evidence on such appeal.'' The amount of the damages awarded appellant by the reviewers might have been, with propriety, omitted; but the peculiar language of the second remonstrance seems to justify the mention. There was no error in the giving of instruction one.

Second. Upon return of adverse reports by the viewers and reviewers, appellant filed before the commissioners his remonstrance for damages under §7653 Burns 1908,
12. Acts 1905, p. 521, §5, setting forth therein divers items, or elements, of damage .he would suffer by a location and opening of the proposed highway through his lands. There was no mention made in the remonstrance of any injury, or damage, resulting from an obstruction of the drains. During the trial of the case on appeal in the circuit court, a witness, while testifying in chief for appellant, was asked by counsel to describe how the tile drains, crossing the line of the proposed road, would be obstructed by the opening of the road. Objection was interposed, because no such claim for damages was set forth in the remonstrance, and was, therefore, not within the issues. The objection was rightly sustained. *Trittipo* v. *Beaver* (1900), 155 Ind. 652; *Strayer* v. *Taylor* (1904), 163 Ind. 230. In the latter case it is said: ''It is, however, a rule that the cases in this State thoroughly enforce, in appeals by remonstrants in drainage and highway proceedings, that, with the exception of objections that go to the jurisdiction of the board over the subject-matter, such remonstrants cannot present any question that was not raised in the commissioners' court.''

If destroyed or impaired drainage was a source of damage to appellant, he should have called the attention of reviewers to the fact in his remonstrance.

Rehearing denied.