SLAUGHTER *v.* STATE OF INDIANA.

[No. 26,506. Filed January 14, 1936. Rehearing denied March 23, 1936.]

*Donald Baker* and *W. S. Henry*, for appellant.

*Philip Lutz, Jr.*, Attorney-General, and *Caleb J. Lindsey*, Deputy Attorney-General, for the State.

TREMAIN, J.—Appellant was indicted on a charge of

murder in the first degree while in the commission of the crime of burglary, tried, convicted, and sentenced to death.

On appeal he has assigned as errors: (1) overruling his motion in arrest of judgment; (2) overruling his motion for *venire de novo*; (3) overruling his motion to be discharged from custody; (4) overruling his motion for a new trial; and (5) overruling his petition for oral argument on motion for a new trial. Appellant has waived any right he may have had by reason of assignments 1, 2, and 3 by failing to discuss or refer to the same under "Propositions and Authorities."

The motion for a new trial contained seventy-five alleged errors, many of which are not discussed, and therefore are waived. The questions relied upon in the motion for a new trial will be discussed in the order presented by appellant.

First, appellant contends that the trial court committed reversible error in refusing to hear oral argument on the motion for a new trial, especially since the motion, in part, was based upon newly discovered evidence shown by affidavits. The affidavits were attached to the motion for a new trial and were made by persons who resided in Terre Haute, where the crime was committed. The affidavits did not bring into the record any new matter. The facts contained therein were either cumulative merely of facts stated at the trial, or tended to contradict some of the state's witnesses upon collateral questions.

It is the duty of the trial court to safeguard constitutional rights of the accused. It will be presumed to have done so in the absence of an affirmative showing to the contrary. There is no statute in this state expressly authorizing an oral argument upon the presentation of a motion for a new trial. The

only oral argument recognized by statute is the argument to the jury. Burns' Ann. St. 1933, Section 9-1805.

In *Wheeler* v. *State* (1902), 158 Ind. 687, 693, 63 N. E. 975, it is held to be wholly within the discretion of the court as to whether oral argument will be heard on a motion for a new trial. Foreign authorities are cited in that opinion in support of the proposition. No other Indiana decision is cited. The rule is that where the trial court exercised discretionary authority, the burden is upon the party who asserts an abuse of that authority. The conduct of the argument before a jury upon the facts, pursuant to Section 9-1805, *supra,* is within the discretion of the trial court. When that question has been presented to this court, it has refused to interfere unless it is apparent that the trial court abused its discretion. *Combs* v. *State* (1881), 75 Ind. 215; *Morrison et al.* v. *State* (1881), 76 Ind. 335; 16 C. J. 1247, §2762½.

Since there is no statute authorizing oral argument upon the presentation of the motion for a new trial, the discretionary authority of the trial court in refusing to grant it should not be disturbed unless that discretion has been abused. At the time the motion for a new trial was presented, the facts were fresh in the mind of the court. The presumptions are in favor of the court's action. No reversible error was committed by the court in denying the oral argument.

Appellant's second proposition discussed under "Propositions and Authorities" is that the court erred in overruling the motion for a new trial. Following this proposition, the appellant uses twenty-seven printed pages discussing the insufficiency of the evidence to convict. He says the evidence does not show that he was in Terre Haute at the time of the murder; that there is no evidence that a burglary was

committed; and that there is no evidence to establish that the appellant did the killing.

A number of witnesses testified that the appellant drove into the vicinity of a colored settlement in Terre Haute on the afternoon of October 2, 1934; that he was driving a Ford V-8 with an Alabama license plate; that he made inquiry from persons concerning a lodging place for the night and was directed to the home of one William Slaughter, not related to appellant, where he secured a room for the night; that he carried two bags into the house, and, after spending some time in his room, asked William Slaughter whether or not there was an Elks lodge in Terre Haute, and upon being informed that there was, left his lodging place and returned about nine o'clock that evening; that he stated that he had been to the Elks lodge and that someone there requested him to return later; that he asked William Slaughter to call him at midnight; that William Slaughter called him at that time; and that the appellant left the house and did not return until about five o'clock upon the morning of August 3rd.

About four o'clock on that morning police were called to the home of a Mr. Buckley at 45 Barton Ave., and were informed that a burglary was being committed in that residence. The police responded immediately and surrounded the house. One of them, Walter Lanfair, went to the rear of the house. He was alone. Shortly thereafter several shots were fired, and when the other policemen rushed to that place, they found Lanfair lying upon the back porch in a dying condition, having been shot through the head with a .45 caliber revolver.

It appears there was a hedge or some bushes in the rear of the Buckley residence, and that another residence was located only a few feet from the hedge. At least one witness in this other residence, who had been aroused by the shooting, was standing in the window

and saw a dark man running from the scene of the shooting, and later recognized the appellant as the same man. This witness testified that the man who was running lost his hat in leaving the back yard.

A number of the witnesses who saw the appellant on the afternoon of August 2nd, visited him in the jail, when he was returned after his arrest, and saw him at the trial, and identified him as the person whom they had seen on the afternoon of August 2nd. Some of these witnesses had conversation with him upon that evening. They described his clothing, his car, and his general appearance. Other witnesses testified as to having seen him drive away on the morning of the 3rd of August, and testified that he had a different car. William Slaughter noticed that the appellant was driving a different car and spoke to him about it. Appellant stated that he had borrowed it from a friend. He told witnesses that he was leaving that morning for Indianapolis.

At the time he left the Slaughter home on the morning of the 3rd, William Slaughter was sitting on the front porch reading the morning paper. The appellant asked to see the paper and looked at it for a while, and then returned it. At that time appellant said to William Slaughter that he had had a little trouble last night and was asked if it was very serious. The appellant answered, "Yes, very serious."

The hat found in the back yard of the Buckley home was identified as the one worn by the appellant. Instead of driving to Indianapolis, the appellant went to Evansville. A witness testified as to his presence there and identified him as Gaston Slaughter, the appellant. He was traced from there to Memphis, Tennessee, where he registered at a hotel, and from there to Texas, where he was arrested and returned to Terre Haute.

It is shown by the evidence that appellant carried a .45 caliber revolver; that he had been convicted twice

before of burglary, and at the time of the Terre Haute trouble, had escaped from a Texas prison where he was serving a forty-year sentence.

Concerning the burglarizing of the Buckley home, Mrs. Buckley testified that her husband was called away from his home about "ten minutes of three and left the house about 3:30"; that she was awake at the time her husband left. She described the home and the windows, one of which had been opened. She testified as set out in appellant's brief:

> "My house was burglarized. Twenty-five Dollars in money taken from my purse. Next day found it laying on the porch on cabinet. Left it the night before in the front bedroom under my hat. I found the intruder or the burglar had opened my grip and two felt hats had been taken out of a paper bag, which I found in the living room on the floor. . . . My investigation discloses the burglar had been in the entire house."

While the evidence is largely circumstantial, it is entirely sufficient to warrant the jury in concluding that the appellant burglarized the home and killed the decedent. The conviction is sustained by sufficient evidence.

Appellant's third proposition relied upon is the alleged error of the court in overruling appellant's motion for a new trial on the ground of newly discovered evidence. In support of this assignment he filed the affidavits of eleven parties. One affiant is John T. Ricketts, Jr., who testified as a witness in the trial. His affidavit is not materially different from his testimony. Lucinda Clark made an affidavit in which she testified to facts tending to contradict the state's witness William Slaughter, in that he stated to her that he did not know the appellant Gaston Slaughter. Each of the affiants, Charles Clayton, Golden Yarbough, George Gates, Elizabeth Allen, Edna Mitchell, and Robert Bowman, testified to having seen a colored

man driving a Ford V-8 on August 2nd, and that he was not the appellant. Charles Ellis and Harry Roush each made an affidavit contradicting the testimony of the state's witness, Maurice Reitzel, as to where he was employed on August 2, 1934. The appellant made an affidavit in which he attempted to re-emphasize certain points in his testimony at the trial.

Viewing the affidavits in the most favorable light to the appellant, the most that can be said is that they are merely cumulative of the facts that had been given at the trial. The court finds nothing in the affidavits to warrant the granting of a new trial upon the grounds of newly discovered evidence.

As his fourth and last proposition, the appellant complains of the court's action in reading certain instructions to the jury, tendered by the state. His brief discloses that all of the instructions read to the jury were tendered either by the appellant or by the state; that the court gave no instructions of its own motion; that all instructions, except three, tendered by appellant were read to the jury; that no complaint is made on account of the court's refusal to give the three which were denied. Those tendered by appellant and read to the jury were not as favorable to him as were the instructions tendered by the state, being twenty-six in number.

Complaint is made to the giving of instructions numbered 1, 2, 3, 4, 5, 7, 11, 12, 13, 22, and 24. The objection to most of these instructions is mere criticism; no authority is cited to sustain the criticism; no substantial objection is made. Such criticisms as are made in the brief are not sufficient to present any question to this court. *Wysor Land Co.* v. *Jones* (1900), 24 Ind. App. 451, 56 N. E. 46; *American Food Co.* v. *Halstead* (1905), 165 Ind. 633, 76 N. E. 251.

The most serious criticism made by appellant is addressed to instructions 13 and 24. Number 13 reads as follows:

"It is necessary that every material element of the crime charged against an accused should be proved by the evidence beyond a reasonable doubt, but it is not necessary that all incidental or subsidiary facts should be proved beyond a reasonable doubt. Evidence is not considered in fragmentary parts, and as though each fact or circumstance stood apart from the others, but the entire evidence is to be considered, and the weight of testimony to be determined from the whole body of the evidence. A circumstance considered apart from other evidence may be weak, if not improbable, but when viewed in connection with surrounding facts and circumstances may be so well supported as to remove all doubt as to its existence as detailed by the witness. Acts considered apart from other evidence may appear innocent, but when considered with other evidence may import guilt."

Number 24 is in all respects the same as Number 13, except it is applied to the circumstantial ingredients of the crime instead of "every material element of the crime." Appellant cites *Rains* v. *State* (1899), 152 Ind. 69, 52 N. E. 450, to sustain his objection. This case is an authority against him rather than for him. The instructions state the law correctly. *Hinshaw* v. *State* (1897), 147 Ind. 334, 379, 47 N. E. 157; *Eacock* v. *State* (1907), 169 Ind. 488, 502, 82 N. E. 1039; *Sterling* v. *Frick* (1908), 171 Ind. 710, 715, 86 N. E. 65, 87 N. E. 237; *Sharp* v. *State* (1919), 188 Ind. 276, 123 N. E. 161; *Wade* v. *State* (1880), 71 Ind. 535; *Males* v. *State* (1927), 199 Ind. 196, 199, 156 N. E. 403; *Witt* v. *State* (1933), 205 Ind. 499, 508, 185 N. E. 645.

Considering all the instructions together, and in reference to each other, as this court is bound to do, the law is stated as favorably to the appellant as he could ask. It would require too much space to set out all of the instructions. The appellant's rights

were carefully safeguarded by the court. The jury could not be misled by the instructions given. Upon the whole the record clearly and sufficiently established that appellant had a fair trial. There is evidence to sustain every material allegation. It is sufficient to exclude every reasonable hypothesis other than that of the appellant's guilt of murder. The jury was correctly informed by the court.as to the law applicable to the case.

Finding no reversible error in the record, the judgment of the lower court is affirmed.