## M. O'CONNOR & CO. v. GILLASPY.

[No. 21,006. Filed February 28, 1908. Rehearing denied May 15, 1908.]

1. TRIAL.—*Jury.*—*Selection.*—*Examination.*—*Discretion of Trial Court.*—The trial court should exercise a sound legal discretion in permitting parties to examine jurors on their *voir dire*, the object being to secure a competent and wholly disinterested jury to try the case. p. 431.

2. SAME.—*Jury.*—*Examination of.*—*Interest in Indemnifying Insurance Companies.*—In an action for damages caused by defects in an elevator, it is not an abuse of discretion for the trial judge

to permit plaintiff's attorney to ask each juror on his *voir dire* whether he, or any member of his family, is interested in any indemnity insurance company. p. 432.

3. EVIDENCE.—*Exclusion.*—*Payment of Hospital Bills.*—*Cross-Examination.*—*Payment by Indemnity Company.*—*Motions to Set Aside Submission and Discharge Jury.*—In an action for damages caused by a defective elevator, the complaint calling for reimbursement for medical expenses, but plaintiff's evidence being silent as to any such expenses, it is not erroneous, where defendant's treasurer testified that defendant paid such medical expenses, to permit plaintiff, on cross-examination, to ask if defendant had not been reimbursed by an indemnity company, the defendant's objection to such question being sustained; and motions to set aside the submission of the cause, and to discharge the jury therefor, should be overruled. p. 433.

4. CONTRACTS.—*Indemnity Insurance.*—*Attitude of Courts Toward.* —Indemnity contracts are legitimate; and if there be a tendency on the part of juries, in damage actions, to render larger verdicts against employers that are insured than against those that are uninsured, such fact must be taken into consideration in executing such contracts, and the parties interested have no right to impose upon courts the duty of preventing the jury from directly or incidentally receiving knowledge thereof. p. 434.

5. TRIAL.—*Juries.*—*Discharge of Duty.*—*Presumptions.*—*Misconduct.*—Juries are presumed to do their duty, and a charge of misconduct must be affirmatively shown by the facts. p. 435.

6. EVIDENCE.—*Testing Elevators.*—*Declarations of Inspector.*—*Res Gestae.*—In an action for damages caused by a defective elevator, evidence by defendant's treasurer of declarations previously made by an inspector, while inspecting same, in reference to what he intended to do to test such elevator's condition are not admissible, such declarations being no part of the *res gestae.* p. 436.

7. NEW TRIAL.—*Grounds.*—*Untrue Answers to Interrogatories.*— *"Misconduct of Jury."*—An allegation in a motion for a new trial that the jury made incorrect answers to interrogatories, does not constitute a charge of "misconduct of the jury." p. 437.

8. TRIAL.—*General Verdict.*—*Interrogatories.*—*Negativing Certain Acts of Negligence.*—Where the answers to the interrogatories to the jury negative certain alleged acts of negligence, a general verdict for plaintiff is affirmatively shown to rest upon other alleged acts of negligence. p. 437.

9. SAME.—*Interrogatories.*—*Supported by Evidence.*—*Elevators.*— *Inspection.*—An answer to an interrogatory, that the city elevator inspector did not inspect the elevator in question about a week or ten days before the happening of the accident complained of, is not unsupported by the evidence, where such inspector and

another testified that such an inspection was made and there was evidence showing that at the time of the accident several strands of cable were rusted in two, and that the dogs were so rusty as to be immovable except with the aid of a crowbar. p. 437.

10. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 438.

11. NEGLIGENCE.—*Defective Elevators.*—*Notice.*—*Evidence.*—Where there is evidence showing defects from rust in an elevator, and there is no evidence showing such defects were either latent, or of recent occurrence, it is a question for the jury whether the defendant was chargeable with notice thereof. p. 438.

From Boone Circuit Court; *Samuel R. Artman,* Judge.

Action by James C. Gillaspy against M. O'Connor & Co. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Joseph W. Hutchinson, W. A. Ketcham* and *Samuel M. Ralston,* for appellant.

*A. J. Shelby* and *W. J. Beckett,* for appellee.

MONTGOMERY, J.—Appellee recovered a judgment of $9,000 on account of personal injuries received while in appellant's employ from the falling of an elevator. The complaint charged appellant with negligence: (a) in failing to inspect properly, and to keep in good working order the elevator, and in using a hoisting rope thereon that was worn and partly broken; (b) in violating an ordinance of the city of Indianapolis which required all counterweight and hoisting cables used in elevators to be metallic with hemp centers; (c) in violating an ordinance of said city requiring every cable-hoisted elevator car, or platform, that runs in grooves, to be provided with an approved safety device that would prevent the car from falling in case of a break in the cable or machinery; (d) in failing to keep the safety device provided in proper working condition, and suffering the "dogs" thereon to become rusty and the spring to become too weak and rusty to operate the dogs; (e) in violating an ordinance of said city requiring a metallic capacity plate to be fastened in a conspicuous place

in the elevator, and prohibiting loading beyond seventy-five per cent of such capacity.

The overruling of appellant's motion for a new trial is the only error assigned.

The grounds of the motion for a new trial are that the verdict is not sustained by sufficient evidence and is contrary to law; that there was misconduct on the part of appellee, irregularity and error of law at the trial, (a) in asking the jurors upon their *voir dire* whether any of them or any member of their families was interested as stockholder, officer, agent or employe of any accident insurance company, and (b) in asking Bernard O'Connor, secretary and treasurer of appellant company, upon cross-examination (1) whether at the time of the accident appellant did not have insurance which included the bill of Dr. Oliver for services rendered to appellee on account of his injuries, (2) whether he did not pay such bill for the insurance company; and (3) whether appellant had not been reimbursed for the sum paid on this bill; that there was error in refusing to permit Bernard O'Connor to state what John Cryan said while inspecting the elevator as to what he intended to do in that connection; and that there was misconduct on the part of the jury in returning untrue answers to certain interrogatories.

Parties litigant in cases of this class are entitled to a trial by a thoroughly impartial jury, and have a right to make such preliminary inquiries of the jurors as may seem 1. reasonably necessary to show their impartiality and disinterestedness. In the exercise of this right counsel must be allowed some latitude, to be regulated in the sound discretion of the trial court, according to the nature and attendant circumstances of each particular case. The examination of jurors on their *voir dire* is not only for the purpose of exposing grounds of challenge for cause, if any exist, but also to elicit such facts as will enable counsel to exercise their right of peremptory challenge intelligently.

Questions addressed to this end are not barred though directed to matters not in issue, provided they are pertinent, and made in good faith. It does not appear from the record that an accident or indemnity insurance company was 2. in any manner interested in this action, but the laws of this State authorize the incorporation of companies for indemnifying employers against liability for accidental injuries to employes, and it is a matter of common knowledge that numerous companies are engaged in such insurance in this State. Although the pertinency or relevancy of the inquiry does not affirmatively appear from the record, the circumstances mentioned forbid the assumption that counsel acted in bad faith and without some knowledge or information inducing a belief that such insurance company was interested in the result of the trial. We accordingly hold that the judge did not abuse his discretion or commit error in permitting appellee's counsel over objection to ask each juror upon his *voir dire* whether he or any member of his family was in anywise interested as stockholder, officer or agent of the Aetna Insurance Company, or of any insurance company engaged in the business of insuring against accidents. *Brusseau* v. *Lower Brick Co.* (1907), 133 Iowa 245, 110 N. W. 577; *Foley* v. *Cudahy Packing Co.* (1903), 119 Iowa 246, 93 N. W. 284; *Viou* v. *Brooks-Scanlon Lumber Co.* (1906), 99 Minn. 97, 108 N. W. 891; *Antletz* v. *Smith* (1906), 97 Minn. 217, 106 N. W. 517; *Spoonick* v. *Backus-Brooks Co.* (1903), 89 Minn. 354, 94 N. W. 1079; *Howard* v. *Beldenville Lumber Co.* (1906), 129 Wis. 98, 108 N. W. 48; *Faber* v. *C. Reiss Coal Co.* (1905), 124 Wis. 554, 102 N. W. 1049; *Cripple Creek Mining Co.* v. *Brabant* (1906), 37 Colo. 423, 87 Pac. 794; *Vindicator, etc., Mining Co.* v. *Firstbrook* (1906), 36 Colo. 498, 86 Pac. 313; *Swift & Co.* v. *Platte* (1903), 68 Kan. 1, 72 Pac. 271, 74 Pac. 635; *Dow Wire Works Co.* v. *Morgan* (1906), (Ky.), 96 S. W. 530; *Blair* v. *McCormack Const. Co.* (1907), 107 N. Y. Supp. 750.

Bernard O'Connor, secretary and treasurer of M. O'Con-

nor & Co., while testifying in its behalf, said that appellant had paid the bill at the infirmary and Dr. Oliver's

3. charges for professional services rendered to appellee. Appellee's counsel upon cross-examination sought to show that these payments were made for an insurance company, and that appellant had been reimbursed for the same. Appellant's objections to the questions propounded were sustained, and thereupon appellant moved to set aside the submission and to discharge the jury, which motion was overruled. Counsel for appellant earnestly insist that these questions, taken in connection with the objectionable inquiry of the jurors upon their *voir dire*, injected an irrelevant, improper and harmful element into this case, which requires a reversal of the judgment. It is contended that in this manner counsel for appellee adroitly brought to the attention of the jury a suggestion that an insurance company was obligated to indemnify appellant against all liability on account of this accident, and thereby facilitated the recovery of a verdict and enhanced its amount.

The complaint alleged that on account of his injuries appellee had been put to great expense for doctor's bills, medicines and nurse hire, but no proof was offered in his behalf of payment of or liability for, any specific bills of this character. It appeared incidentally that appellee had been confined in the hospital and had received medical attention, and in this state of the record appellant proved by Mr. O'Connor that it had paid the bills so incurred. Appellee's counsel insist that since appellant opened the door to this collateral inquiry appellee had a right to enter; and appellant having sought to gain undue favor with the jury in this way cannot complain of the attempt to cross-examine and break the force of this influence, and at the same time contradict the statement of the witness as originally made and thus affect his credibility. We are not required to decide whether

the evidence of payment of the accounts mentioned by appellant, was relevant and proper, but we do hold that its introduction was sufficient to invite the questions propounded by appellee's counsel, and to acquit them of any imputation of bad faith or charge of misconduct in so doing. As said by the court of appeals of Kentucky, in the case of *Henning* v. *Stevenson* (1904), 118 Ky. 318, 80 S. W. 1135: "We do not see that there was any misconduct of counsel in asking the questions, for the admissibility of the evidence was a subject on which lawyers might well differ. But the court not having admitted it, we must presume that the jury tried the case under the evidence before them."

In the trial of this case it was wholly immaterial whether appellant was insured against liability or loss for such accidental injuries as that upon which this suit was founded. The existence of indemnity insurance could not change the facts upon which appellee predicated his action, or alter their legal effect as between appellee and appellant. But the cross-examination by appellee having been fairly invited by appellant's evidence, the court sufficiently protected appellant's rights by sustaining objections to the questions. If in point of fact appellant was not indemnified and had not been reimbursed for the payment of the bills in question, and had the objections to such inquiries been waived or withdrawn, and had Mr. O'Connor been allowed so to testify, then certainly appellant's interests could not have been affected. If, on the other hand, appellant was indemnified, that contract was perfectly legitimate, and no very

4. cogent reason occurs to us for keeping the fact a profound secret, and the objection urged might appear to be for the benefit of a third party rather than for that of this appellant. If it be true, as suggested by counsel, that juries in this class of cases may be inclined to return more liberal verdicts against employers that are insured than against those that are not, this fact must be taken into account in making these contracts, rather than require courts

to treat them as clandestine at the peril of committing reversible error. We are fully cognizant of the evils of injecting immaterial and collateral inquiries into the trial of a cause, and are not to be understood as in any degree approving or condoning such practice, but the point we seek to make is that we are unable to appreciate the harmful consequences flowing from this incident of which appellant's counsel complain. The supreme court of Iowa, in the case of *Hammer* v. *Janowitz* (1906), 131 Iowa 20, 108 N. W. 109, in treating of a similar contention, tersely sums the matter up as follows: "But we see nothing in the record to indicate that the offer was not made in good faith, nor can we presume that appellant was or could have been prejudiced thereby. It is constantly happening that parties to a jury trial propound questions and offer testimony which the courts deem inadmissible, and record is made of the offer and ruling for use if need be on appeal; and if the fact of offering incompetent or immaterial testimony, which is excluded, is to be held a cause for granting a new trial, few, if any, verdicts could stand the test of such rule."

This grievance is not founded upon the admission of improper testimony, but only upon an intimation by counsel, discountenanced by the court at the time, that some one other than appellant might be interested in the defense of this case. The obligation of the jurors binds them to accept the law and the evidence as their only guides in arriving at a verdict, and we must assume that they will treat all litigants with fairness and impartiality. We are not warranted in presuming that they disregarded their oaths, but such fact, if true, must be made to appear. No claim is made that the verdict is excessive, nor can we find anything in the record indicating that appellant was injured by the suggestion that an insurance company was indemnifying appellant against loss on account of this accident. The court rightly overruled appellant's motion to set aside the submission and discharge the jury. *Spoonick* v.

*Backus-Brooks Co., supra; Vindicator, etc., Mining Co.* v. *Firstbrook, supra.*

Bernard O'Connor was asked to tell how Cryan tested the safety device on the elevator, and answered, that he had a block, "a foot long, I guess, and he had the elevator supported on this block, the block resting on the floor, and he had some slack in the cable, and I did not remain there to see him knock the block off; I asked him what he was doing and he told me he was —." At this point appellee interposed an objection to the witness's giving any conversation, whereupon appellant offered to prove that Cryan said "he was expecting to knock the block out and see if the safety device would work." The court sustained appellee's objection and appellant excepted and urges this ruling as error.

It is contended that the declaration offered was material and admissible as part of the *res gestae*. The general rule governing the admission of declarations as a part of the *res gestae* is that such declarations must be contemporaneous with the principal fact, or so near in point of time that they must be regarded as part of the principal transaction, and so immediately and closely connected therewith in this respect as to be practically inseparable and serviceable to a clear understanding of the matter in question. Note to *People* v. *Vernon* (1869), 95 Am. Dec. 49, 57; 24 Am. and Eng. Ency. Law (2d ed.), 664, 666. An assertion or declaration respecting a future event is not ordinarily admissible upon the principle of *res gestae* unless it tends to reveal motive, intention or mental condition, and thus to unfold the nature and quality of the main fact. No such explanation was required in connection with the testing of the safety device, as that act was self-explanatory. John Cryan testified as a witness, and explained the way in which he tested the safety device; and Mr. O'Connor corroborated him by showing that he saw the test made up to the point of supporting the elevator platform with a block of wood. The mere state-

ment of Cryan that he expected to knock out this block of wood could not, if admitted, add any weight to his sworn testimony that he did do so, supported as it was by the facts witnessed by Mr. O'Connor. The rejection of the proffered declaration was right in itself, and harmless at all events.

An allegation in a motion for a new trial that the jury made incorrect or untrue answers to certain interrogatories returned with their general verdict will not consti-
7. tute a charge of "misconduct of the jury," within the meaning of §585 Burns 1908, §559 R. S. 1881, 1 Thornton's Civil Code, §352.

The jury made answers to interrogatories finding the fact to be that the elevator was supplied with a metallic hoisting cable having a hemp center, and also with an ap-
8. proved safety device; hence the general verdict cannot rest to any extent upon those specifications of negligence.

In support of their claim that the verdict is not supported by sufficient evidence and is contrary to law, appellant's counsel insist that the jury answered interrogatory
9. thirty-six contrary to the undisputed evidence. This interrogatory and the answer thereto were as follows: "Did John Cryan as city elevator inspector inspect the elevator and its appliances about a week or ten days before the accident? A. No." Bernard O'Connor and Joseph O'Connor testified that the inspection by Cryan was made a week or two before the accident, which occurred on August 7, 1905. John Cryan said he began his duties as city inspector on Monday of the last week in June, 1905, and inspected this elevator about two weeks later, and again he said he would judge it was the latter part of July.

The evidence was overwhelming and undisputed from examinations made immediately after the accident that the cable was so affected by rust that several strands of wire were eaten in two at the point where it parted, and the dogs on the safety device were so rusted as to be immovable except

with the aid of a crowbar. These visible facts no doubt influenced the jury in determining the time and character of Cryan's inspection. *Cleveland, etc., R. Co.* v. *Ward* (1897), 147 Ind. 256; *Pennsylvania Co.* v. *Witte* (1896), 15 Ind. App. 583; *Kennedy* v. *McAllaster* (1898), 52 N. Y. Supp. 714. The jurors manifestly reached the conclusion that Cryan did not inspect the elevator at the time indicated by this interrogatory, and we are unable to say that their conclusion was erroneous.

The evidence was in direct conflict upon the question whether a capacity plate had been placed in the elevator prior to the accident, and we are accordingly bound by the finding of the jury upon this question.

Appellant's counsel concede in argument that there was evidence authorizing the jury to find that the cable was defective from rust and the safety device out of order, but they insist that appellant is not shown to have had notice or knowledge of such facts. In the absence of sufficient showing that these infirmities and defects were either latent or of recent occurrence, the fact of their existence precludes us from disturbing the conclusion of the jury that they had existed for a sufficient length of time to charge appellant with knowledge thereof and to afford opportunity to repair the same. The consequences likely to ensue from the falling of an elevator upon which human beings are carried are so grievous as to impose upon the owner a high degree of care and watchfulness in keeping the same in a safe condition. The verdict is sustained by evidence upon every material point, and the motion for a new trial was rightly overruled.

The judgment is affirmed.