## EVANSVILLE GAS AND ELECTRIC LIGHT COMPANY *v.* ROBERTSON, ADMINISTRATRIX.

[No. 7,612. Filed January 31, 1913. Rehearing denied June 3, 1913. Transfer denied January 14, 1914.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Sufficiency.—Conclusions.*—A complaint containing a general charge of negligence against the master which resulted in the alleged injury to the servant will withstand a demurrer, and mere recitals and conclusions of the pleader as to particular acts will be treated as surplusage. p. 358.

2. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Sufficiency.*—A complaint against an electric company for the death of a servant showing that decedent, in obedience to the order of the foreman under whom he was working, was at work at the top of a light pole on which were wires charged with heavy currents of electricity, which, if a circuit was formed, would produce instant death to one coming in contact therewith, that it was defendant's duty to properly insulate the decedent and otherwise provide for his safety while so engaged, and that defendant knew of the danger to decedent unless he was so protected, but notwithstanding such knowledge negligently failed to insulate and protect him, whereby decedent while in the performance of his work was electrocuted, was sufficient to withstand a demurrer. pp. 358, 359.

3. PLEADING.— *Complaint.— Allegations.—Sufficiency.*—The allegation, in a complaint for the death of a servant by contact with an electric wire, that "it was necessary for said deceased to be in close proximity to said feed wire", when considered with other allegations that the pole on which decedent was at work "carried a feed wire that was so heavily charged with electricity that to come in contact with the same so as to form a circuit would destroy human life; that the presence of said feed wire and its effect upon human life were known to defendant", and disclosing that decedent was ordered to go upon the pole to attach a guy wire to a cross arm, was sufficiently clear to enable the court to understand that decedent was required to be near the feed wire attached thereto. p. 359.

4. MASTER AND SERVANT.— *Injuries to Servant.— Actions.— Voir Dire Examination of Jurors.— Waiver of Error.—* In an action against an employer for the death of a servant, the error, if any, in permitting counsel for plaintiff to ask each juror on *voir dire* examination if he was either a stockholder, officer, employe or agent of a specified insurance company that had issued a policy

to defendant indemnifying it against loss by reason of injury to its employes, was waived by defendant's failing to object to the submission of the cause, to move to set aside the submission, and to save exceptions to the rulings on such motions. p. 360.

5. APPEAL.— *Briefs.—Questions Considered.*—Although appellant's failure to set out in its brief the exact page and line of the record where all the instructions may be found was a technical violation of Rule 22, the defect did not bar a consideration of the questions in view of the fact that both appellant and appellee had filed helpful briefs containing much argument and citation of authorities. p. 361.

6. MASTER AND SERVANT.— *Injuries to Servant.— Trial.— Instructions.*—In an action for the death of a servant, the action of the court in setting out the entire complaint in an instruction, on the theory of giving the jury the material allegations thereof, though not in accord with approved practice, was not cause for reversal where it did not appear that appellant was harmed thereby. p. 361.

7. MASTER AND SERVANT.— *Injuries to Servant.— Trial.— Instructions.*—Where the court, in an action for the wrongful death of a servant, embodied the only remaining paragraph of complaint in its instruction on the material allegations, its failure therein to refer to the questions of contributory negligence and assumption of risk, and its inadvertent statement that the jury should find for plaintiff if the evidence preponderated in her favor, not only in respect to the material allegations of that paragraph, but if the evidence so preponderated as to any of the paragraphs, was harmless in view of other instructions given. p. 361.

8. APPEAL.—*Review.—Consideration of Instructions.*—The court on appeal in reviewing questions presented on the instructions, will consider such instructions as a whole. p. 361.

9. APPEAL.—*Review.—Instructions.*—In an action for the death of a lineman while at work on an electric light pole, neither an instruction objected to on the ground that the court usurped the right of the jury in saying directly what it was or was not the duty of decedent to do, nor one stating that unless decedent was guilty of some negligent act in touching the charged wire, he was not guilty of contributory negligence, was erroneous. p. 362.

10. MASTER AND SERVANT.—*Injuries to Servant.—Trial.—Instructions.*—In an action for the wrongful death of a servant an instruction setting out certain duties and stating that "a servant does not assume risks flowing from his employer's negligence in these duties", was not erroneous when its full context was considered with the other instructions given. p. 362.

11. APPEAL.—*Review.—Harmless Error.—Refusal of Instructions.* —Requested instructions were properly refused, where, in so far

as they were correct, they were fully covered by the instructions given.  p. 362.

12. MASTER AND SERVANT.—*Injuries to Servant.*—*Duty of Master.* —An employer, while engaged in the maintenance of highly charged electrical wires on poles that its employes must ascend in the discharge of their duties, is bound to know the natural and ordinary hazards of the work, and must use care commensurate to the danger to eliminate such hazards while its employes, with its knowledge, are engaged in such work.  p. 363.

13. MASTER AND SERVANT.—*Duty of Master.*—*Safe Place of Work.* —The duty of a master in respect to the maintenance of a safe working place for its servants, especially when the work is among elements and appliances which are dangerous only in the absence of care on the master's part, imposes on the master the obligation to use active vigilance and care, and liability for a failure in this respect cannot be escaped on the theory that the master did not know that the servant would encounter the danger at the moment of its negligence.  p. 364.

14. MASTER AND SERVANT.—*Master's Duty.*—*Safe Place of Work.*— *Delegation of Duty.*—Where the place of work of an electric lineman became dangerous only in the event of the grounding of an uninsulated guy wire that he was attempting to attach to a pole, it was the duty of the master to use care commensurate with the danger to prevent the grounding of such wire, and such duty could not be delegated to a servant so as to allow the master to escape liability.  p. 364.

15. APPEAL.—*Review.*—*Conclusiveness of Verdict.*—The court on appeal will not disturb a verdict on the ground of insufficient evidence if there is any evidence to sustain it.  p. 365.

From Gibson Circuit Court; *Herdis F. Clements*, Judge.

Action by Lena Robertson, as administratrix of the estate of Roy R. Robertson, deceased, against the Evansville Gas and Electric Light Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Elmer E. Stevenson* and *Iglehart, Taylor & Hartman*, for appellant.

*Philip W. Frey, F. J. Pentecost, Lucius C. Embree* and *Morton C. Embree*, for appellee.

SHEA, J.—This was an action by appellee against appellant to recover damages for the death of her deceased husband, Roy R. Robertson, alleged to have been caused by the

negligence of appellant. The complaint was in four paragraphs, to each of which a demurrer for want of facts was overruled. Appellant answered by a general denial. At the close of the evidence, appellee dismissed the first, second and third paragraphs of complaint, and the cause was submitted to à jury on the fourth paragraph. A general verdict was returned in favor of appellee and judgment rendered on the verdict. Appellant's motion for a new trial was overruled. The errors assigned are, the overruling of the demurrer to the fourth paragraph of complaint, and the overruling of appellant's motion for a new trial.

From the complaint it appears, in substance, that appellant was a corporation engaged in furnishing electric light and power by means of electricity to its customers in the city of Evansville, Indiana; that it maintained poles in that city, upon which wires were strung upon cross arms attached thereto, by means of which it distributed electric currents; that these poles are kept in position by means of wire ropes extending from them to guy poles. Appellee's decedent was employed by appellant as a lineman. One pole was located at the corner of Sixth Avenue and Franklin Street, carrying what is known as a feed wire, charged with a voltage of electricity sufficient, when a circuit was formed, to kill instantly any person coming in contact with it. Near the opposite corner on which the pole was situated, appellant maintained a guy pole, from which wires were stretched, designed to steady and keep the main pole in an upright position. On June 2, 1906, appellant had in its employ one Dan McDonald whose duties were to superintend and direct the repair and construction of its poles and lines, and who was authorized to determine when repairs were needed, and to direct the manner in which they should be made. On said day, appellant, by McDonald, determined to strengthen the pole on the corner of Sixth Avenue and Franklin Street by guying it. The pole, at that time, carried a feed wire so heavily charged with electricity that to come in contact

with it so as to form a circuit, would destroy human life, and the presence and effect of this feed wire were known to appellant. It was the duty of decedent, under the order of McDonald to climb the pole and make such tests and attachments thereto as directed by him. Appellant's rules required it to fully protect persons sent upon such poles in the line of their employment, and it therefore undertook to protect and insulate decedent while engaged in his work in such dangerous place. On the day of the accident, decedent was directed to go upon the pole, and did, in the line of his duty, climb it to attach a guy wire thereto. In so doing it was necessary for him to be in close proximity to the feed wire. When decedent climbed the pole, McDonald was on the ground near the foot of it for the purpose of insulating and protecting him. A guy wire was then sent up to decedent, who, realizing the danger of the feed wire, and relying wholly upon appellant to protect and insulate him in accordance with its rules and practices, undertook to fasten the guy wire to the pole; that appellant negligently failed and refused to insulate or protect decedent, of which failure he had no knowledge or means of knowledge, for the reason that his attention was confined to the work he was engaged in doing, and also because the end of the guy wire where it was near the ground was quite a distance from the pole; that appellant negligently failed to insulate the end of the guy wire on or near the ground, and the guy wire, coming in contact with the ground, formed a circuit which, when the decedent came in contact with the feed wire, caused his death. Appellant negligently failed to warn decedent that the guy wire was not properly insulated; that the coming in contact with the feed wire, in the handling of the guy wire, was without fault on the part of decedent; that such contact would not have injured decedent in any manner had the guy wire been properly insulated; that decedent at the time of his injury was in the exercise of due care, and did not know and could not know that the guy wire, at the

time of his injury, was not properly insulated; that decedent would not have gone upon the pole and near the feed wire except that he believed and relied upon appellant to properly insulate the guy wire so that a circuit could not be formed with the feed wire; that appellant knew of the presence of the feed wire and the imminent danger to decedent unless he was fully protected and insulated, but it negligently failed to insulate and protect him; that by reason of appellant's negligence, a circuit was formed when the uninsulated end of the guy wire came in contact with the ground at the time decedent's body came in contact with the feed wire, and the decedent at that time having hold of the guy wire with his hands, in the line of his duty, was instantly killed.

If the complaint in this case contains a general charge of negligence against the master, as a result of which negligence, appellee's decedent received the injury which

1.    resulted in his death, the complaint will withstand a demurrer (*Lake Erie, etc., R. Co.* v. *Moore* [1908], 42 Ind. App. 32, 81 N. E. 85, 84 N. E. 506; *Indianapolis, etc., Traction Co.* v. *Newby* [1910], 45 Ind. App. 540, 90 N. E. 29, 91 N. E. 36; *Princeton Coal, etc., Co* v. *Roll* [1904], 162 Ind. 115, 66 N. E. 169), and mere recitals and conclusions of the pleader with respect to particular acts will be treated as surplusage. *Ochs* v. *M. J. Carnahan Co.* (1908), 42 Ind. App. 157, 76 N. E. 788, 80 N. E. 163; *Hamilton Nat. Bank* v. *Nye* (1906), 37 Ind. App. 464, 77 N. E. 295; *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331, 61 N. E. 726; *City of New Albany* v. *Armstrong* (1899), 22 Ind. App. 15, 53 N. E. 185; *Reed* v. *Tioga Mfg. Co.* (1879), 66 Ind. 21; *Harding* v. *Third Presbyterian Church* (1863), 20 Ind. 71; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99. The complaint in this case very specifically charges that appellee's decedent, in the service

2.    of appellant, and in obedience to the order of the foreman under whom he was working, was at work

in a place of great and imminent danger, to wit, at the top of a light pole on which there were strung wires carrying heavy currents of electricity, which, if a circuit was formed, would cause instant death to him or any other person coming in contact therewith; that it was the duty of the master to properly insulate decedent while engaged in such dangerous and hazardous employment, and otherwise provide for his safety while so engaged; that appellant knew at the time in question, of decedent's great and imminent danger unless he was fully protected and insulated, but notwithstanding such knowledge, it negligently failed to insulate and protect him, and by reason thereof, a circuit was formed between the feed wire on the pole upon which he was at work, and the guy wire with which he was at work, and that decedent received the full voltage of electricity through his body, causing his instant death. Appellant ably argues that the allegation in the complaint that "it was necessary for said deceased to be in close proximity to said feed wire", is pleading a conclusion. The allegations of the complaint disclose that appellee's decedent was ordered to do the work in question. It is also alleged that "said pole at that time carried a feed wire that was so heavily charged with electricity that to come in contact with the same so as to form a circuit would destroy human life; that the presence of said feed wire and its effect upon human life was known to the defendant." It is the opinion of the court that this allegation is sufficiently clear to enable the court to understand that a man who was obliged in the performance of his duty to fasten the guy wire to the cross arm, as stated in the complaint, was obliged to be near the feed wire attached thereto. The demurrer to the fourth paragraph of complaint was properly overruled.

The first reason assigned in support of the motion for a new trial is the error of the court in permitting appellee's counsel, over appellant's objection, in the examination of

the jurors as to their qualifications to serve as such, 4. to ask each juror if he was either a stockholder, officer, employe or agent of the Frankfort Marine and Accident Insurance Company "which has issued a policy to the defendant, The Evansville Gas and Electric Light Company, indemnifying it against any loss or damage that it may have to pay by reason of injury to its employes." As preliminary to the question, counsel for appellee offered to prove that the company named had issued a policy of the kind, and was in court defending by its hired counsel. The court did not require the proof, but permitted appellee's counsel to interrogate the jurors. Appellee cites as authority for the correctness of the trial court's ruling on this question, the cases of *M. O'Connor & Co.* v. *Gillaspy* (1908), 170 Ind. 428, 83 N. E. 738; *Goff* v. *Kokomo Brass Works* (1909), 43 Ind. App. 642, 88 N. E. 312. An examination of these cases discloses that the question directed to the jurors covered only one point, namely, as to whether they were interested in an insurance company. In the case at bar, the question goes beyond the scope of the questions in the cases cited. This court expressly disapproves the method of examination of the jurors in the case being considered, as above set out, and had the question been properly presented here, it might be cause for a reversal. However, we are of the opinion that appellant can not submit his cause to a jury, and upon an adverse verdict and judgment have the relief he seeks in this court. Appellant should have objected to the submission of the cause to the jury, moved to set aside the submission, and saved exceptions to the ruling of the court thereon in order to properly present this question.

Appellant insists that the court erred in giving to the jury instructions Nos. 1, 4, 5 and 14 requested by appellee, and in refusing to give instructions Nos. 3, 7, 11, 12, 13, 14, 16, 17 and 18 tendered by appellant.

It is insisted by appellee that appellant has not set out

in its brief the exact page and line of the record where all of the instructions may be found, and that this error 5. is in violation of the rules of this court. This may be said to be a technical violation of the rule, but inasmuch as both counsel for appellant and appellee have filed helpful briefs, with much argument and citation of authorities, the court will pass upon the points urged against the instructions.

In instruction No. 1 objected to by appellant, the court set out the complaint in full, on the theory that it was giving the jury the material allegations thereof. It is com- 6. plained that the court, in giving an instruction of this character, should have embraced all of the elements and conditions essential to a verdict. It is 7. stated that the court omitted reference to contributory negligence, and the question of assumption of risk. The court also, evidently inadvertently, said that the jury should find for appellee, if the evidence preponderated in her favor, not only in respect to the material allegations of the fourth paragraph of the complaint, but if the evidence preponderated in her favor as to any of the paragraphs of complaint. Three of the paragraphs of the complaint had been dismissed by appellee at the close of the evidence. While the practice of copying a complaint, including the caption and signature of counsel, in an instruction to the jury, should not be encouraged, we are not able to say that appellant was harmed thereby in this case. The other objections urged against this instruction, set out above, are fully covered by other instructions in this case. It 8. has been repeatedly decided by this court, as well as by the Supreme Court, that the instructions must be taken as a whole, and that particular instructions or parts of instructions shall not be taken out from the whole body thereof, and subjected to criticism. *Sterling* v. *Frick* (1909), 171 Ind. 710, 86 N. E. 65, 87 N. E. 237; *Eacock* v. *State* (1907), 169 Ind. 488, 82 N. E. 1039; *Indianapolis Trac-*

*tion, etc., Co.* v. *Formes* (1907), 40 Ind. App. 202, 80 N. E. 872; *Southern Ind. R. Co.* v. *Baker* (1906), 37 Ind. App. 405, 77 N. E. 64.

Objections to instructions Nos. 4, 5 and 14 given at the request of appellee are also made. It is stated that in No. 4, the court usurped the rights of the jury in saying directly what it was or was not the duty of decedent Robertson to do. We see no error in this instruction which could have rendered it harmful. Instruction No. 5 is objected to on the ground that it stated to the jury what acts of Robertson would constitute contributory negligence. The instruction directs the jury that unless Robertson was guilty of some negligent act in touching the charged wire, he could not be held to be guilty of contributory negligence. We think this is not erroneous.

Instruction No. 14 is criticised because it states "a servant does not assume risks flowing from his employer's negligence in these duties." (The duties referred to were set out.) We think this is not an erroneous statement of the law taken in connection with the full context of the instruction, together with the other instructions given in the case. *Newcastle Bridge Co.* v. *Doty* (1907), 168 Ind. 259, 79 N. E. 485.

Instructions Nos. 3, 7, 11, 12, 13, 14, 16, 17 and 18 tendered by appellant were refused by the court. As this court views the instructions, they were rightly refused, for the reason that the court covered every legal proposition correctly stated in these instructions in some one of the others given.

Appellant also argues that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law. The whole argument of appellant rests upon the theory that the men who were, under the direction of the foreman, engaged in the work of holding the uninsulated guy wire from the ground, so as to protect the men who were upon the pole, including appellee's decedent, were engaged in the

same line of work as appellee's decedent, and that they were therefore fellow servants. Therefore the injury was caused by the negligence of a fellow servant. If this is a correct application of the fellow servant rule, appellant's contention must be sustained.

The work of decedent required him to be upon the pole. It was the duty of appellant to use care commensurate with the danger toward keeping the place safe. The place 12. became unsafe not because of the presence of the feed wire, and decedent's contact with it, but because the uninsulated guy wire came in contact with the ground. If the uninsulated guy wire had not been suffered to come in contact with the ground, Robertson could have remained in contact with the feed wire indefinitely without injury. It was appellant's duty to prevent contact of the guy wire with the ground. Robertson, while engaged in his work, had a right to rely upon the performance of this duty. When appellant sent decedent to fasten the guy wire as charged, it, was its legal duty to know, and it did know that the working place could not be a safe one, if, by its negligence, a deadly current might be sent through decedent's body. The perilous situation of the servant demanded care on the part of the master. When he sends his servant into a working place that he knows may become unsafe in the absence of necessary precautions on the part of the master, and which he knows will be safe if such precautions are used, the master can not escape liability when such precautions are omitted. While engaged in the maintenance of highly charged electrical wires on poles that its employes must ascend in the discharge of their duties, it is bound to know the natural and ordinary hazards of the work at such places, and such knowledge the law imputes to it. In view of this knowledge, it is the duty of such master to use care commensurate to the danger to eliminate such hazards while its employe, with its knowledge, is engaged in its work. The duty of the master in respect to the maintenance of a safe

working place for its servants, especially when; the work is among elements and appliances which are dangerous only in the absence of care on its part, imposes on the master the obligation to employ active vigilance and care. We think this duty can not be escaped on the theory that the master did not know that the servant would encounter the danger at the moment of its negligence.

In this case, the working place of decedent became highly dangerous only in the event of the grounding of the uninsulated guy wire, thus forming a circuit, the current of which became deadly to decedent or any other person who came in contact with it. In view of the legal rule which required appellant to use care commensurate with the danger to keep the working place safe, it was the duty of appellant to use such care to prevent the contact of the uninsulated guy wire with the ground, and this duty could not be delegated so as to allow the master to escape liability. *Brazil Block Coal Co.* v. *Young* (1889), 117 Ind. 520, 20 N: E. 423; *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 68 N. E. 901; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *Lake Erie, etc., R. Co.* v. *Ford* (1906), 167 Ind. 205, 78 N. E. 696; 1 Thompson, Negligence §796; *Snyder* v. *Wheeling Electric Co.* (1897), 43 W. Va. 661, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. 922; *Newark Electric, etc., Co.* v. *Garden* (1896), 78 Fed. 74, 23 C. C. A. 649, 37 L. R. A. 725; *Overall* v. *Louisville Elec. Light Co.* (1898), 47 S. W. (Ky.) 442; *Denver Con. Electric Co.* v. *Simpson* (1895), 21 Colo. 371, 41 Pac. 499, 31 L. R. A. 566; *Geissman* v. *Missouri, etc., Electric Co.* (1903), 173 Mo. 654, 73 S. W. 654; *Nagle* v. *Hake* (1904), 123 Wis. 256, 101 N. W. 409; *Herbert* v. *Lake Charles Ice, etc., Co.* (1903), 111 La. 522, 35 South. 731, 100 Am. St. 505, 64 L. R. A. 101; *Wilbert* v. *Sheboygan Light, etc., Co.* (1906), 129 Wis. 1, 106 N. W. 1058, 116 Am. St. 931; *Perham* v. *Portland Elec. Co.* (1898), 33 Or. 451, 53 Pac. 14, 72 Am. St. 730, 40 L. R. A. 799.

This court will not disturb the verdict of the jury on the ground that it is not sustained by the evidence, if there is any evidence to sustain the verdict. *Delaware, etc., Tel. Co.* v. *Fiske* (1907), 40 Ind. App. 348, 81 N. E. 1110.

15.

The verdict is not contrary to law. Judgment affirmed.

NOTE.—Reported in 100 N. E. 689. As to assumption of risk and contributory negligence in law of master and servant, see 97 Am. St. 884, 98 Am. St. 289. As to duty and liability of electric corporations, see 100 Am. St. 515. As to whether a servant may assume the risk of dangers created by the master's negligence see 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215. On the nondelegability of master's duty of selecting appliances, etc., for linemen, see 30 L. R. A. (N. S.) 49. As to liability of electric company to employe for injury caused by electric shock, see 32 L. R. A. 351. As to the right of a jury to consider the fact that an employer is insured against accidents to employees, see 3 Ann. Cas. 554; 9 Ann. Cas. 323; Ann. Cas. 1913 C 359. See, also, under (1) 26 Cyc. 1386; (2) 26 Cyc. 1389, 1390; (4) 24 Cyc. 320; (5) 2 Cyc. 1014; (6) 38 Cyc. 1610; (7) 38 Cyc. 1781; (8) 38 Cyc. 1778; (10) 38 Cyc. 1779; (11) 38 Cyc. 1711; (12) 26 Cyc. 1120; (13) 26 Cyc. 1097; (14) 26 Cyc. 1104; (15) 3 Cyc. 348.