## CINCINNATI GAS, COKE, COAL AND MINING COMPANY
### v. UNDERWOOD.

[No. 8,409.　Filed December 11, 1914.　Rehearing denied October 6,
1915.　Transfer denied December 17, 1915.]

1.　MASTER AND SERVANT.—*Injuries to Servant.—Masterial Duty.—
Safe Place to Work.—Complaint.*—In a servant's action for in-
juries caused by the falling of a scaffold used in connection with
the operation of a sand crib, a complaint alleging facts showing
that it was defendant's duty to furnish plaintiff a safe place to
work, and that defendant failed to discharge such duty, whereby
the injuries complained of resulted to plaintiff, was sufficient to
withstand a demurrer.　p. 355.
2.　APPEAL.—*Review.—Evidence.*—The court on appeal will not de-
termine the preponderance of the evidence, and if there is proper
evidence on which the verdict may rest, it will not be reviewed.
p. 355.
3.　MASTER AND SERVANT.—*Injuries to Servant.—Evidence.—Verdict.*
—Evidence disclosing that plaintiff was hired by defendant's fore-
man in charge of its sand boat and gravel plant as a fireman and
workman, that such foreman, pursuant to directions from defendant
erected a scaffold in a sand crib out of such material as he had on
hand, that plaintiff knew nothing of the scaffold until he was direct-
ed to assist in repairing a screen in the sand crib, in the doing of
which he was required to go upon the scaffold, and that the scaffold
was constructed of defective and improper material, so that it
gave way and precipitated plaintiff to the ground, producing the
injuries complained of, was sufficient to sustain a verdict for plain-
tiff in an action against the master for such injuries.　p. 356.

4. MASTER AND SERVANT.—*Injuries to Servant.—Assumed Risk.*—A servant of mature years, of ordinary intelligence, and in full possession of all his faculties, must exercise his natural senses for his own safety, and if he is derelict in duty in this respect he can not recover for injuries received.   p. 357.

5. MASTER AND SERVANT.—*Injuries to Servant.—Safe Place of Work.—Vice Principals.—Evidence.*—In an action for injuries to a servant by the collapse of a scaffold erected in a sand pit, where there was evidence showing that the scaffold was erected pursuant to directions from defendant to use such materials as were at hand, by an employe of defendant who had authority to direct the men and was the only person about the premises with authority to direct the work, the verdict for plaintiff was not contrary to law, since the evidence warranted the finding that such employe, in the construction of the scaffold, was a vice principal in charge of the master's work; it being the duty of the master, which he can not delegate so as to avoid liability, to use ordinary care to provide a reasonably safe working place for the servant, and also to furnish suitable and proper materials necessarily required to keep it safe. p. 358.

6. MASTER AND SERVANT.—*Injuries to Servant.—Defective Place of Work.—Fellow Servants.*—Assuming that an employe of defendant, while engaged in the erection of a scaffold was performing work incident to his employment so as to make him a fellow servant of plaintiff who was subsequently injured by the collapse of such scaffold, due to defective materials used in the construction, negligence of such employe in the construction of the scaffold would not exempt defendant from liability, since it was defendant's duty to furnish proper materials and its failure in this respect was negligence concurring with that of the fellow servant in producing the injury.   p. 360.

7. MASTER AND SERVANT.—*Injuries to Servant.—Safe Place of Work.—Instructions.*—In an action for injuries to a servant by the collapse of a scaffold, an instruction that defendant was required to furnish plaintiff a reasonably safe place of work, and was bound to continuously exercise ordinary care to ascertain the condition of equipment and applicances, and was chargeable with notice that equipment and appliances would deteriorate and wear, as well as with notice of any defect ascertainable in the exercise of ordinary care, and was required to keep equipment and appliances in a reasonably safe condition, was a correct statement of the law and not misleading.   p. 360.

8. MASTER AND SERVANT.—*Injuries to Servant.—Instructions.—Review.*—Where defendant had actual notice that there was generally a bad condition of things about plaintiff's place of employment, and gave to its foreman specific directions to do the best he could in building a scaffold with the materials at hand, etc., defendant's objection to instructions, in an action for injuries to

plaintiff by the collapse of the scaffold, on the theory that defendant was not charged with any duty with respect to the condition of the working place, etc., was untenable. p. 361.

9. MASTER AND SERVANT.—*Injuries' to Servant.—Instructions.— Form.*—An instruction that plaintiff had a "perfect" right to presume that the equipment and appliances were reasonably safe, was not rendered erroneous by the use of the word "perfect". p. 362.

From Superior Court of Mar on County (82,965); *Joseph Collier,* Judge.

Action by Edgar Underwood against the Cincinnati Gas, Coke Coal and Mining Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Pogue, Hoffheimer & Pogue, Frank S. Roby, Ward H. Watson, Elias D. Salsbury* and *Sol. H. Esarey,* for appellant.
*Doan & Mathews,* for appellee.

SHEA, J.—Action by appellee against appellant to recover damages for personal injuries alleged to have been negligently inflicted upon him. The complaint in one paragraph alleges substantially the following: That appellant was a corporation conducting business in Marion County, Indiana, and on April 17, 1909, was operating a sand boat and gravel plant on White River near Morris Street in the city of Indianapolis, Indiana; that for the purpose of pumping the gravel it had an engine and boiler located on a flatboat on said river used to operate the pump which pumped the sand and gravel from the bottom of the river and carried it into a crib located on the bank. The cribs contained sieves for screening the gravel and sand and were about twenty-five feet high and five by six feet on the sides, constructed of four upright posts upon which planks were nailed closely together forming a long

crib or box with the posts at each corner, and situated on the inside thereof. Appellee was employed by appellant as fireman and workman on the boat, and was under the management, direction and control of one Curry who was the foreman in charge of the operation of the boat, and whose duties included the location and operation of the cribs. That appellant had located said crib and "constructed a scaffolding upon said crib for the purpose of affording a place for this plaintiff and other workmen to stand while in the performance of work for these defendants; that said scaffold was constructed by means of cross pieces being nailed upon each side of said crib and nailed to said upright posts within said crib and extending out beyond the sides of said crib for a distance of about one foot upon each side thereof, and that upon the extension of said cross pieces so nailed a plank or board was placed which formed said scaffolding"; that this scaffolding was situated about fifteen feet from the ground, and that it was necessary to be so constructed in order that persons might get within said crib to adjust the screens for the purpose of screening gravel as it was pumped out of the river and came into the crib; that appellee was ordered to go upon said scaffolding for the purpose of adjusting the gravel screen within the crib, and while so in the performance of his work under the direction of the foreman, said scaffolding gave way and fell to the ground, causing him to sustain serious injuries. The acts of negligence charged are that said scaffolding was negligently constructed in that it was nailed to said posts which were so rotten and decayed that they would not hold an ordinary nail, of which condition appellant had knowledge; that appellant negligently permitted the scaffolding so constructed to remain, and negligently ordered ap-

pellee to go upon same in the performance of his work; that by reason of the negligent construction, the nails pulled out of the rotten posts by the weight of appellee, and thereby caused the scaffolding to fall. It is alleged that appellee had no knowledge of the condition of the crib, nor that said posts were rotten and decayed, and that it was impossible for him to ascertain this for the reason that the posts to which the supports for the scaffold were nailed were inside and covered by the planks forming the sides of the crib; that it was impossible for him to have seen same by the exercise of ordinary care, and that he had nothing to do with the construction of the crib or scaffold. Appellant's demurrer to the complaint was overruled. An answer in general denial formed the issues submitted to the jury for trial. Finding and judgment for appellee for $2,500.

The errors relied on for a reversal are that the court erred in overruling appellant's demurrer to the complaint and its motion for a new

1.  trial. The complaint is vigorously assailed by appellant. The complaint avers with sufficient clearness that it was the duty of the master to furnish appellee, its servant, a safe place to work. It also charges a breach of the duty, resulting in the injuries complained of, and is therefore sufficient to withstand a demurrer. *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99.

The grounds alleged for a new trial, so far as they are presented to this court are as follows: (1) The verdict of the jury is not sustained by sufficient evidence. (2) The verdict of the jury is contrary to law. (3) The court erred in giving to the jury on its own motion instructions Nos. 1 to

2.  20 inclusive. This court will not weigh the evidence for the purpose of determining

where the preponderance lies.    If proper evidence was heard by the jury upon which to base its verdict, this court will not review it.    The evidence discloses that appellee Underwood was hired

3.    by Mr. Phillips, an employe of appellant company in charge of its sand boat and gravel plant, as described in the complaint.    Several days before the injury complained of, Phillips, said foreman in charge of the plant, complained to appellant company and its officers of the condition of the sand cribs then in use, stating that he had no material with which to make necessary repairs.    He was directed then by said company to use such material as he had, as they could not supply him with other things.    It became necessary to move the crib in question from the position which it then occupied.    Mr. Phillips was directed to do this work by the officers of the company.    He was also directed to use such men as were employed about the place to assist him.    Pursuant to this direction Phillips ordered Underwood to assist him in the work of moving the particular crib.    This he did to the extent of driving the team hitched to the crib, with a rope about 100 feet in length, dragging it a distance of —— feet, at which place it was raised to an upright position, and made fast to the ground.    The evidence discloses that after it was so placed in position, the scaffolding in question was erected by Phillips. Appellee Underwood testified that Phillips did all the work; that he knew nothing of it until he was directed to assist in repairing the screen, testifying as follows: "Q.    This scaffolding—was it on it when it was put up or was it put on afterwards? A.    It was put on afterwards.    Q.    Who put it on? A.    Mr. Phillips.    Q.    Were you present when he put it on? A.    No, sir.    Q.    I asked you, were you up there at any time while he was putting this

scaffolding up? A. No, sir, I did not know this scaffold was up until I went out there." The evidence discloses that upon the inside of this particular crib, constructed substantially in the manner described in the complaint, were placed certain screens used for the purpose of separating the gravel from the sand, and it became necessary in some manner to repair these screens. Phillips directed appellee Underwood to assist him in this work by carrying certain materials from the ground up the ladder, an elevation of about fifteen feet, and handing them to him, Phillips, who was on the inside of the crib. It became necessary for Underwood to take his position on the scaffold to assist in the work. In so doing, he carried and used a crowbar. It is suggested in argument by appellant's learned counsel that the accident must have been caused in some way by appellee's effort to assist Phillips with the use of the crowbar. We have searched diligently for evidence of this kind, but the record fails to disclose any. The record itself discloses that the upright pieces to which the scaffolding was nailed were rotten and decayed, and insufficient to hold the scaffold in its proper position when subjected to Underwood's weight; that one side of said scaffolding, because of said condition of the timbers, gave way, precipitating appellee to the ground, and causing his injury. There was sufficient evidence upon which the jury might base its verdict, and it will not be disturbed on that account. *Evansville Gas, etc., Co. v. Robertson* (1914), 55 Ind. App. 353, 100 N. E. 689.

It is next urged that the verdict is contrary to law. It is a well settled principle of our law that a servant, a man of mature years, of ordinary

4.  intelligence, and in full possession of all his faculties must exercise his natural senses for

his own safety, and failing so to do, must suffer the consequences. *McElwaine-Richards Co.* v. *Wall* (1906), 166 Ind. 267, 276, 76 N. E. 408. If appellee was derelict of duty in this respect, he can not recover. The facts disclose that appellee was hired primarily to fire the engine, which was situated some distance away on a boat in the river. He was also required, when called upon, to assist the foreman Phillips in such other work as it became necessary to do about the premises. It becomes important, therefore, in the consideration of this question, to determine the relation which existed between Phillips and Underwood. If, in the construction of the scaffolding, which was done, according to the evidence, by Mr. Phillips, he was performing a detail of the work at hand in making the particular place safe at which both he and Underwood were required to work, then he was engaged in the work of a fellow workman, and appellant can not be held to be liable. *Perigo* v. *Indianapolis Brewing Co.* (1898), 21 Ind. App. 338, 52 N. E. 462.

But on the other hand, it is the duty of the master to use ordinary care to furnish a reasonably safe place in which his servants are to work, and this duty is a continuing one, which can not be delegated by the master so as to escape liability for injury resulting to the servants therefrom. *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 68 N. E. 901; *Patterson* v. *Southern R. Co.* (1913), 52 Ind. App. 618, 99 N. E. 491. It is also the duty of the master to furnish suitable and proper materials with which, in this case, necessary repairs could be made to the crib in question, so as to make it a safe place to work. *Patterson* v. *Southern R. Co.,* supra; *Haakensen* v. *Burgess Sulphite Fibre Co.* (1912), 76 N. H. 443, 83 Atl. 804, Ann. Cas. 1913

B 1122.   The evidence discloses that Phillips was the man in charge of this work; that by direction of the officers of the company he hired and discharged employes; that he was the only person about the premises who had authority to direct the work, there being no other officer or employe of the company about the premises, and, as disclosed by the evidence heard, Phillips was the only man who ever gave orders or directions to appellee Underwood. We think upon this state of facts the jury was fully warranted in finding by its general verdict that Phillips was a vice principal in charge of the master's work in the construction of said scaffold.   It can not be said that the verdict of the jury is contrary to law in this respect upon the condition of the record disclosed herein.   Furthermore, it may be stated that the master had ample notice of the general condition of said crib in time to have furnished material, and have made the proper repairs.   The direction of the master to Phillips to use such material as he had on hand was negligent conduct in the light of all the facts in this case, for which the master can not escape liability.   It can not be said that the construction of this scaffold in which appellee Underwood states he did not participate in anyway, and of which he had no knowledge, was a mere incident of the employment, which would make Phillips, the builder thereof, a fellow servant of Underwood, thus enabling the master to escape liability.   The duty of making the crib safe for use was delegated by the master to Phillips, and therefore the acts of Phillips were the acts of the master. In the case of *Patterson* v. *Southern R. Co.*, *supra*, the court at page 623 used this language: "It is recognized that the primary duty of providing a reasonably safe place for the servant to work, and safe tools and appliances with which to work is on the master,

and this duty is a continuing one, which the master can not delegate to an employe and escape responsibility. If this duty is so delegated, the employe, no matter what his rank or grade may be, becomes a vice principal and not a fellow servant, and his act is the act of the master." If it could be held in this case that Phillips was a coemploye of appellee Underwood, and that he negligently constructed the scaffold in question, it would not excuse appellant in this case, for its negligent failure to furnish proper material with which to do the necessary work of repairs about the premises. In other words, the negligence of the master in failing to furnish material with which to do the work concurred with the negligence of Phillips, and the master would therefore be liable. *Rogers* v. *Leyden* (1890), 127 Ind. 50, 26 N. E. 210; *Wabash R. Co.* v. *McNown* (1913), 53 Ind. App. 116, 99 N. E. 126, 100 N. E. 383; *Marietta Glass Mfg. Co.* v. *Pruitt* (1913), 180 Ind. 434, 102 N. E. 369. We can not say that the verdict of the jury is contrary to law.

Many instructions are complained of. Instruction No. 8 given by the court on its own motion reads as follows: "The law exacted of defendant the duty to furnish and provide the plaintiff with a reasonably safe place in which to perform his work. And that duty on the part of defendant did not end with simply providing safe equipment and appliances in the first instance, but the further duty was imposed upon defendants of continuously exercising ordinary care to ascertain the condition of such equipment and appliances. It was chargeable with notice of the tendency of the equipment and appliances to deteriorate, or wear out by use or exposure, and it was required to keep the equipment and appliances in a reasonably safe condition, and it was chargeable with notice of any

defect which could have been ascertained by the exercise of reasonable care in that particular." It is stated in criticism of this instruction that the uncontradicted evidence was that appellee's injury was caused by a scaffold negligently constructed by a fellow servant; that the negligence in the construction consisted in attempting to fasten the scaffold supports to decayed posts. It is contended that appellant had no notice that anyone would nail a scaffold to the decayed post, or that any scaffold would be built, therefore, when the judge charged the jury that the duty was imposed upon appellant to continuously exercise care to ascertain the condition of the equipment, he assumed facts both outside the issue and the evidence. We think the instruction is not subject to the criticism of appellant's learned counsel, but that said instruction states the general principles of the law clearly, and that said principles are applicable to the facts proven and could not have misled the jury.

Instruction No. 9 given by the court on its own motion is also criticised, on the theory that appellant was not charged with any duty with respect to the condition of the crib, or tendency of the wood to decay, or that the scaffold was dangerous, or that appellant had any knowledge whatever of the fact that a scaffold was erected or to be erected. It seems that appellant's learned counsel overlook the fact that appellant company had actual notice that there was generally a bad condition of things at the sand plant, and that Phillips was given specific directions, in effect, to do the best he could with the materials at hand, and in so doing, the scaffold was erected, as a result of which the injury occurred.

Instruction No. 10 is criticised because it uses the language that plaintiff had "a perfect right to pre-

sume" that the equipment and appliances on the crib and scaffold in question were reasonably safe. The use of the word "perfect" is criticised. The language would have been more nearly in harmony with that generally used if the word "perfect" had been omitted, but we can not see that harm could result to appellant from the use of the word "perfect" in this case.

We have examined instructions Nos. 11 and 12, also criticised, and find no error which can be regarded as harmful to appellant. The instructions taken as a whole state the law fairly and correctly. We find no evidence of contributory negligence upon the part of appellee. We have also examined other questions which appear wholly technical. There is no error in this record which would warrant the court in reversing the judgment. Judgment affirmed.

NOTE.—Reported in 107 N. E. 28. For the different forms of statement of the general rule with respect to the master's duty as to places and appliances furnished to his servant, see 6 L. R. A. (N. S.) 602; on the master's nondelegable duties as to defects in scaffolds, platforms, etc., see 54 L. R. A. 69, 77. On the question of the duty of the master to furnish safe appliances as affected by the fact that defective appliances are prepared by a fellow servant, see 3 L. R. A. (N. S.) 500; 4 L. R. A. (N.S.) 220. As to the question of vice principalship as considered with reference to rank of superior servant, see 51 L. R. A. 513. And for vice principalship as determined with reference to the character of the act causing the injury, see 54 L. R. A. 33. As to liability of master for injuries to servant caused by fall of scaffolding, see 18 Ann. Cas. 611; Ann. Cas. 1913 B 1123. See, also, under (1) 26 Cyc 1389; (2) 3 Cyc 348; (3) 26 Cyc 1444; (4) 26 Cyc 1231; (5) 26 Cyc 1321; (6) 26 Cyc 1302; (7) 26 Cyc 1097, 1136; (8) 26 Cyc 1142; (9) 26 Cyc 1491.