TERRITORY OF MONTANA, RESPONDENT, v. BEN-
JAMIN E. HARRIS, APPELLANT.

CRIMINAL LAW — *Prize distribution — License — Sections 1356 and 1366, division 5,
Compiled Statutes, construed.* — The defendant, a merchant, in order to in-
crease the sale of his goods, gave to each purchaser a ticket, entitling him to a
chance to draw one of several prizes, mentioned in an advertised distribution of
prizes to be made by the merchant. A license tax to carry on a prize distribu-
tion business was demanded of the defendant before the drawing took place,
under section 1356, division 5, Compiled Statutes, and upon his refusal to pay
the same he was arrested, tried, and convicted under section 1366, division 5,
Compiled Statutes. *Held,* that the defendant was properly convicted; that
under section 202, subdivision 1, and section 204, division 5, Compiled Statutes,
the words "carry on business," as used in section 1356 aforesaid, and "transact
business," as employed in section 1366 aforesaid, are convertible terms; and
that the acts of the defendant came within the scope of said last-mentioned sec-
tions, when he gave away or sold prize tickets, whether the prize distribution
was ever made or not.

*Appeal from the First Judicial District, Lewis and Clarke County.*

STATEMENT.

The defendant, Benjamin E. Harris, was convicted in the
District Court of Lewis and Clarke County of the offense of
having carried on a lottery and prize distribution business with-
out a license. He was fined ten dollars. A motion for a new
trial having been overruled, the defendant appealed, alleging
error in the instructions to the jury upon the trial. .

The defendant was a dealer in clothing in the city of Helena,
and for the purpose of increasing his sales advertised that he
would make a lottery distribution of prizes, at which each pur-
chaser of goods at his store, holding a ticket—a purchaser of a
certain amount being entitled to receive one—should have a
chance to draw a prize. Tickets were issued, but the prize
drawing had not taken place when he was arrested, upon his
refusal to pay a license demanded of him by the treasurer of
Lewis and Clarke County for carrying on a gift, lottery, or
prize distribution business. The defendant claimed that the
statutes of the Territory concerning licenses did not contemplate
or include any such enterprise.

*Wade & Toole,* for Appellant.

The statute does not require a license for getting ready to

transact business. It does not require a license for something that may or may not take place in the future; and one transaction does not constitute a business. One distribution of prizes by chance does not constitute the carrying on of the prize distribution business. (*Espy* v. *State,* 47 Ala. 538; *Harris* v. *State,* 50 Ala. 127; *Weil* v. *State,* 52 Ala. 19; *U. S.* v. *Jackson,* 1 Hughes [U. S.] 531; *Holmes* v. *Holmes,* 40 Conn. 117.) This statute differs materially from those that make a single lottery or prize distribution a crime. This statute authorizes lotteries and prize distributions, but only requires a license when they ripen into a business or occupation. The whole scope and spirit of our act concerning licenses is to tax the business, trade, occupation, or employment. And so if this defendant had made a single distribution of prizes and no more, and such transaction was not his business, he could not be held for carrying on the prize distribution business. But the facts in evidence show that the defendant never made even a single distribution of prizes; on the contrary, that he never transacted any business of that kind.

*W. E. Cullen,* Attorney-General, for Respondent.

The making of one contract for the distribution of prizes is "business," and much more is it a carrying on of business, when contracts are made with a great number of people for that purpose. (*Bloom* v. *Richards,* 2 Ohio St. 387–399; *Corbett* v. *Gen. Steam Nav. Co.* 4 Hurl. & N. 483.) It falls within the very definition of "carrying on business," given in the case of *Holmes* v. *Holmes,* 40 Conn. 117, cited in appellant's brief, "a business that is continuing in its nature and embraces many transactions." Where lotteries are prohibited by law, the sale of lottery tickets, even though there has been no distribution, renders the party selling them guilty of carrying on a lottery. (*Bell* v. *State,* 5 Sneed, 507–509; *Salomon* v. *State,* 27 Ala. 26; 2 Archbold's Criminal Pr. & Pl. p. 1002; *People* v. *Charles,* 3 Denio, 212.) The fact that the tickets were given with articles purchased at appellant's store, and that no separate price was charged therefor, does not make the scheme any less a lottery. The consideration for the ticket was the purchase of some one article in appellant's clothing store, and the ticket entitled the

holder to a chance in the distribution of prizes thereafter to take place. However artfully the objects of these schemes may have been disguised, the courts have uniformly held them to be lotteries. (*U. S.* v. *Olney*, 1 Abb. U. S. 275, 280; *Seidenbender* v. *Charles*, 4 Serg. & R. 151; Bishop on Statutory Crimes, §§ 953, n. 1, 956; *State* v. *Clarke*, 33 N. H. 329; 66 Am. Dec. 723; *Commonw.* v. *Thacher*, 97 Mass. 583; 93 Am. Dec. 125; *Dunn* v. *People*, 40 Ill. 465; *Commonw.* v. *Wright*, 137 Mass. 250; 50 Am. Rep. 306; *Hudelson* v. *State*, 94 Ind. 426; 48 Am. Rep. 171; *State* v. *Mumford*, 73 Mo. 647; 39 Am. Rep. 532; *State* v. *Overton*, 16 Nev. 146.)

DE WOLFE, J. — The defendant was tried and convicted in the District Court of the First Judicial District, in Lewis and Clarke County, on an indictment charging him with unlawfully transacting and carrying on the gift, lottery, and prize distribution business without paying a license therefor as required by law, and was fined in the sum of ten dollars. The defendant moved for a new trial; and, upon this being denied, prosecutes this appeal, alleging error in the instructions given by the court to the jury.

The evidence in the case shows that the defendant was engaged in merchandising in the city of Helena; and, in connection with his business as a merchant, at the time alleged in the indictment, in order to increase the sale of his goods, gave to each purchaser a ticket which entitled the holder to a chance to draw one of several prizes mentioned in an advertisement published by defendant. The evidence also shows that he did not pay a license therefor. The law under which the defendant was indicted is as follows: "Every person who shall carry on any gift, lottery, or prize distribution business within this Territory, or sell or dispose of any tickets in any lottery or drawing to take place out of this Territory, shall pay a license therefor of one hundred and fifty dollars per quarter." (Comp. Stats. Mont. § 1356.) Section 1366 prescribes the punishment for transacting business without a license, and is as follows: "Any person or persons who shall transact any business, trade, or occupation or profession for which a license is required by this act, without first obtaining the same, shall be deemed guilty of

a misdemeanor; and upon conviction before any court having competent jurisdiction, be fined in any sum not less than ten dollars, nor more than one hundred dollars." The instructions given by the court were quite voluminous, and, it is believed, stated fully and exactly the law of the case. Without reciting these instructions *in extenso,* we will take one as a sample of all the others, selecting the one to which the appellant seems most strongly to object: "(2) The language of the statute under which this indictment is framed is as follows: 'Any person who shall carry on any gift, lottery, or prize distribution business within this Territory shall pay a license therefor.' Section 26 of the License Revenue Act provides that 'any person or persons who shall transact any business, trade, occupation, for which a license is required by this act, without first obtaining the same, shall be deemed guilty of a misdemeanor.' You will observe that the statute provides that any person who shall transact any business without obtaining the license is guilty of the misde-meanor. I instruct you, then, that a scheme by which certain articles of value are to be distributed among ticket holders, in which a portion of the tickets draw blanks, and a portion only draw prizes, is a gift or prize distribution; and inasmuch as the statute provides that whoever shall transact any prize or gift business, without taking out a license, shall be guilty of a mis-demeanor, the setting on foot of such a scheme, and the disposi-tion of the tickets for the purpose of drawing, is a transaction of business in connection with the scheme, so as to bring the party within the provision of the statute. It is not necessary that there should be an actual distribution, nor is it necessary that the tickets should be sold for a valuable consideration. If they are given away that is all that is necessary. The term 'business' is defined by Webster to be, 'That which busies, or that which occupies the time, attention, or labor of one, as his prin-cipal concern, whether for a longer or shorter time; employment; occupation; any particular occupation or employment for a live-lihood or gain, as agriculture, trade, mechanic art, or profession; mercantile transactions or traffic in general; concern; right or occasion of making one's self busy; affair; transaction, used in an indefinite sense, and modified by the connected words.' The meaning of it, as used by the statute, is any concern or scheme

by which the gift, lottery, or prize distribution is made; and this without reference to the purpose for which it is made."

The objections by the appellant to this instruction are: *First.* The instruction uses the word "transact," instead of the words "carry on," which are employed in the statute. *Second.* Because the instruction charges that the setting on foot a prize distribution scheme, and the giving away or disposing of tickets for the purpose, brings a person who does these acts within the provisions of the statute, although this may not have been followed by any actual distribution of prizes. *Third.* Because a single sale of tickets may be a "transaction of business," but is not the carrying on of business for which the statute requires a license to be paid. *Fourth.* The instruction was incorrect in stating to the jury that no actual distribution was necessary. *Fifth.* The instruction was contradictory; for, while it declares that a distribution is not necessary to the prize distribution business, it defines the word "business" to mean any concern or scheme by which a prize distribution is made. It is somewhat difficult to answer objections so refined as most of these are. We shall not attempt to do so at length, or except in a general way.

The demurrer is to two points: First, that there is a radical distinction between the "transaction of business," and "carrying on business." The first may refer to a single act, while the latter means a pursuit or occupation in which a person engages for the purpose of a livelihood, or as a source of profit. Possibly the distinction exists in the mind of a person bent on the subtle and very technical use of words; but in common parlance, "to carry on business" and "transact business" mean the same thing. They are convertible terms, and the legislature has so used them in the very statute we now have under consideration. In section 1356 the words "carry on" are used to define the business; while in section 1366 of the same act, which prescribes the penalty for doing business without first having procured a license, the word "transact" is substituted for "carry on." It might, with the same reason and consistency, be urged that, because the legislature has not used the identical language in both these sections, it has not prescribed a penalty for "carrying on" a business, but only for "transacting business."

We do not think the plain and obvious meaning of laws should be frittered away by so attenuated an objection. The legislature itself has laid down the rule for the guidance of courts in the construction of statutes. Section 202 of the fifth division of the Compiled Statutes, in the first subdivision says: "Words and phrases shall be understood and construed according to the approved and common usage of the language." Again, section 204 says: "All general provisions, terms, phrases, and expressions shall be liberally construed, in order that the true intent and meaning of the legislative assembly may be fully carried out." In the light of these provisions, we have no difficulty in holding, as we do, that the legislative intention was to compel the payment of the license required by the statute by all persons engaging in the business defined therein; and this intention should not be defeated by a merely verbal criticism of the language employed.

So, likewise, as to the other objection raised to this instruction, that it is contradictory in saying that a distribution is not necessary to the prize distribution business. As a verbal criticism on language, this may be unanswerable. But it is nevertheless true, from the defendant's own evidence, that he did sell or give away these prize tickets under the promise of a drawing or distribution of prizes by chance. It is more creditable to the defendant to suppose that he intended to carry out this promise when he disposed of the tickets, than that he intended to defraud the public or his customers. If so, then he carried on or transacted the business defined in section 1356 of the statutes, although there may never have been any drawing or distribution of prizes as contemplated. The disposal of the exceptions to this particular instruction likewise disposes of the exceptions taken to all the other instructions which the court gave, and also to the instructions asked and refused. They are all substantially to the same point. We find no error in the record, and the judgment of the court is therefore affirmed.

*Judgment affirmed.*

BACH, J., and LIDDELL, J., concur.