# VANDALIA RAILROAD COMPANY *v.* STILLWELL.

[No. 22,249. Filed March 10, 1914.]

1. MASTER AND SERVANT.—*Injuries to Servant.—Liability.—Statutes.*—Under §1 of the Employers' Liability Act (Acts 1911 p. 145) making employers of more than five persons liable for injuries to, or the death of, an employe due to its negligence, or the negligence of its agents, servants, etc., §2 placing the burden

of proof on the question of negligence on the employer, eliminating the doctrine of assumed risk where there is a violation of an ordinance or statute, or any rule, regulation or direction, made by any public commission, as well as the defenses of hazards and dangers inherent or apparent in the employment, and of negligence and contributory negligence resulting from obedience or conformity to any order or direction to which the employe is required to conform, and §3 containing similar provisions as to assumption of risk, and providing that the employe shall not be held to have assumed the risk of any defect in the place of work, or in the tool, etc., which defect was known to the employer or might have been known to him in time to repair or discontinue its use, and placing the burden of proof as to such knowledge on the employer, negligence is the essence of liability, and the law as to when an employe assumes the risk, or is negligent, or as to the burden of proof as to negligence, is not changed, but the fellow servant rule is destroyed, and the rule is changed as to the burden of proof as to knowledge of defects. pp. 270, 272.

2. STATUTES.—*Construction.*—*Constitutional Law.*—In construing a statute, the court must, if possible, give it a construction which will render it harmonious and constitutionally valid. p. 272.

3. CONSTITUTIONAL LAW.—*Master and Servant.*—*Due Process of Law.*—*Injuries to Servant.*—*Liability.*—*Statutes.*—The Employers' Liabilty Act (Acts 1911 p. 145) creates no liability on the part of an employer where there is no negligence, and is therefore not open to the objection that it operates to deprive employers of their liberty or property without due process of law. p. 273.

4. CONSTITUTIONAL LAW.—*Statutes.*—*Class Legislation.*—Where a statute is restricted in its application, the courts are not warranted in overthrowing it as being unconstitutional, unless satisfied from the act itself, or from matters of which courts will take judicial notice, that there can be no basis in reason upon which the classification therein is made to rest. p. 275.

5. CONSTITUTIONAL LAW.—*Equal Protection of Law.*—*Master's Liability for Servant's Injuries.*—*Statutes.*—The Employers' Liability Act (Acts 1911 p. 145) is not invalid as denying the equal protection of the laws because it applies only to employers of five or more persons, since a distinction between an employer of a large number of employes and one employing only a few has some basis in reason, and the court cannot say that it was unreasonable to separate employers into those employing five or more persons and those employing less than five. p. 275.

6. MASTER AND SERVANT.—*Injuries to Servant.*—*Liability.*—*Statutory Provisions.*—Section 3 of the Employers' Liability Act (Acts 1911 p. 145) is not open to the objection that, by its pro-

vision for the nonassumption of the risk of the place, or tool or implement furnished to the employe, it requires employers of five or more persons to exercise a higher diligence than employers of less than five, since by the express provision of §1 of the act, the rule, as it existed at common law, making it the duty of the master to furnish, or exercise ordinary care to see that the tool, implement, or place of work is reasonably safe, still obtains with all its vigor. p. 289.

7. MASTER AND SERVANT.—*Injuries to Servant.—Liability.—Statutory Provisions.— "Business".— "Commerce".—* The Employers' Liability Act (Acts 1911 p. 145) which by its terms applies to employers of five or more persons engaged in business, trade or commerce, applies to railroads, since "business" is that which occupies the time, attention or labor of men for the purposes of profit or improvement as their principal concern, and "commerce" is traffic, including the means and vehicles of traffic, and it is also intercourse and transportation. p. 291.

8. CONSTITUTIONAL LAW.— *Determination of Constitutional Questions.—Necessity of Determination.—*Whether §7 of the Employers' Liability Act (Acts 1911 p. 145) is unconstitutional as depriving the courts of judicial functions is not involved and will not be determined where under the first paragraph of complaint the evidence made a question for the jury as to negligence, and under the second there was no question of defendant's liability under that portion of the act eliminating the fellow servant rule, since §7 is entirely severable from the other provisions of the act. p. 293.

9. MASTER AND SERVANT.—*Injuries to Servant.—Instructions.—*In a railway brakeman's action for injuries, in which the first paragraph of complaint charged negligence of the engineer in backing against the car on which plaintiff was riding in the course of his duty, and the second alleged a cause of action under the Employers' Liability Act (Acts 1911 p. 145) and the evidence showed that his place of work was rendered unsafe either by the negligence of the engineer or through the giving of an order requiring him to be at that place, an instruction that defendant was a corporation and could not discharge in person the obligation of furnishing its employes a reasonably safe place to work, and appliances with which to work, but must provide some agent to take its place, and that the agent to whom it delegated such duty stood in its place and stead, was not misleading, although there 'was no allegation in the complaint of failure to furnish plaintiff a reasonably safe place of work, or appliances with which to work, since it was negligence, and not the place of work, which produced the injury. p. 293.

From Morgan Circuit Court; *Joseph W. Williams,* Judge.

Action by Charles Stillwell against the Vandalia Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Grubbs & Grubbs* and *Pickens & Pickens*, for appellant. *Wymond J. Beckett* and *D. E. Watson,* for appellee.

MYERS, J.—This was an action by appellee against appellant by a complaint in two paragraphs, to recover for personal injuries for alleged negligence while in the employment of appellant, as a freight brakeman. The first paragraph of complaint charges negligence of the engineer in backing an engine and cars against a car on which appellee was riding in the course of his duty, whereby he was thrown from the car and injured, and no question is raised as to its sufficiency. The second paragraph counts on a liability under the Employers Liability Act of March 2, 1911 (Acts 1911 p. 145). The sufficiency of that paragraph is challenged by an assignment of error in overruling appellant's demurrer to it. The specific grounds of challenge of the constitutionality of this act is that it makes an employer liable for an injury to an employe, arising out of dangers and hazards inherent to the nature of the employment, without fault of the employer; that it thereby deprives appellant of its liberty and property without due process of law, in violation of the 14th amendment of the Federal Constitution, and of §12, article 1 of the State Constitution, that it makes employers of five or more persons liable, and leaves employers of less than five persons free from the obligations and liabilities imposed by the act, and thereby denies appellant the equal protection of the laws in violation of the 14th amendment to the Federal Constitution, and §23, article 1, of the State Constitution.

A brief analysis of the act seems pertinent. Section 1 makes its provisions applicable only to employers of five or more persons, and abrogates the fellow servant rule, but restricts liability to *negligence* (our own

italics throughout) in whole or in part producing the injury, or death.    Section 2 places the burden of proof of lack of "due care and diligence," *negligence,* on the employer, in analogy to the act of 1899 (Acts 1899 p. 58, §362 Burns 1908).    Assumption of risk is removed when there is a violation of an ordinance or statute, or any.rule, regulation or direction, made by any public commission.    This last clause is but a declaration of the law and the rule under then existing decisions under analogous statutes.  *Jeffersonville Mfg. Co.* v. *Holden* (1913), 180 Ind. 301, 102 N. E. 21; *Peabody-Alwert Coal Co.* v. *Yandell* (1913), 179 Ind. 222, 100 N. E. 758; *Evansville Gas, etc., Co.* v. *Robertson* (1914), 55 Ind. App. ——, 100 N. E. 689; *American Car, etc., Co.* v. *Adams* (1912), 178 Ind. 607, 99 N. E. 993; *Chandler Coal Co.* v. *Sams* (1908), 170 Ind. 623, 85 N. E. 341.    The defense of the hazards and dangers inherent or apparent in the employment contributing to the injury is taken away. This is but a phase of assumption of risk and a corollary of the removal of the assumption of risk.    The defenses of negligence and contributory negligence, resulting from obedience or conformity to any order or direction to which the employe is required to obey or conform, though contrary to some other rule, are eliminated.    If we were forced to the construction that the last two clauses of §2 take away the element of negligence on the part of the employer, that is, that there shall be a liability irrespective of the employer's negligence, we would be bound to hold it invalid, but we think in view of the provisions of §1 which still allow a recovery only for negligence of the employer, that negligence still is the essence of liability under all the provisions of the act, and that the clauses properly construed mean to take away assumption of the risk only where injury arises from "dangers or hazards inherent or apparent," or from obedience or conformity "to any order, or direction," etc., and is no broader than the express provisions of §§2 and 3, removing assumption of the risk.    This construction renders

the act in the particulars consistent and harmonious,
2. and we are required, if we can, to give it a construction which will render it harmonious and constitutionally valid. By §3 assumption of the risk is removed when the violation by the employer or his or its
1. agents or employes of any ordinance, etc., contributed to the injury, or when it arises from obedience to orders or directions from the employer or any person whom the employe is bound to obey. Then assumption of the risk from defects in the place of work, tools or appliances is removed, where the defect is known to, or by the exercise of ordinary care, can be known in time to repair or to discontinue the use. These clauses are but corollaries of the provisions of §2, as to assumption of risk. The last clause is only a declaration of the rule applied by the courts upon the subject, and of the common law. *Evansville Gas, etc., Co.* v. *Robertson, supra; Romona, etc., Stone Co.* v. *Shields* (1909), 173 Ind. 68, 88 N. E. 595; *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 88 N. E. 69; *Chicago, etc., R. Co.* v. *Wilfong* (1910), 173 Ind. 308, 90 N. E. 307; *Cleveland, etc., R. Co.* v. *Perkins* (1908), 171 Ind. 307, 86 N. E. 405; *Lake Shore, etc., R. Co.* v. *Johnson* (1909), 172 Ind. 548, 88 N. E. 849. There follows however the marked change of the rule, as to the burden of proof, as to the question of assumption of risk, with respect to the place, tools, etc. It may be observed that until the declaration of the fellow servant rule in, *Priestley* v. *Fowler* (1837), 3 M. & W. 1, the master was civilly liable as to third persons for all wrongs committed by himself or his servant, or agent, while acting in the master's business, or within the scope of the agency, but there was no rule of the common law making the master liable for the negligence of fellow servants. The question seems not to have arisen previously. The rule of nonliability, the master being without fault, was first marked in this country in 1841, in *Murray* v. *South Carolina R. Co.* (1839), 1 McMull. (S. C.) 385, 36 Am. Dec. 268 and note. The

doctrine was enlarged in, *Farwell* v. *Boston, etc., R. Co.* (1842), 45 Mass. 49, 38 Am. Dec. 339, from which case the rule became one of general application, so that the statute under consideration marks a distinct departure from the established rule respecting fellow servants. Section 1 destroys the fellow servant rule. Sections 2 and 3 do not change the rule of assumption of the risk in the particulars in which it is declared not to be assumed, or the rule of contributory negligence in the particulars specified, or the rule as it now exists as to the burden of proof as to *negligence,* but §3 does change the rule as to the *burden of proof* with respect to knowledge, or being chargeable with knowledge of the defect in place, tool or appliance in time to repair or discontinue the use.

It is not questioned here, but that the legislature had the power to abolish the fellow servant rule, and restrict the defenses of assumption of the risk, and contributory negligence, and change the burden of proof, if done within constitutional limitations. *Mondou* v. *New York, etc., R. Co.* (1912), 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. The question then becomes one not of power, but of interpretation as to this feature of the case.

3. Appellant claims that the act is invalid because it creates liability "without fault on the part of the employer," and therefore deprives it of liberty and property, without due process of law, and due course of law. We cannot concede the point. The act nowhere attempts to create liability unless *negligence* be present either from violation of some ordinance, statute, rule, etc., or the injury arises from compliance with an order or direction of one whose order or direction the injured person is bound to obey, or from the use of a defective working place, tool or appliance, known by the employer to be defective, or which it is the master's duty to use ordinary care to keep in repair or to discontinue its use. The right to trial by jury

as to the question of *negligence* still remains. We might
have a different question if there were an attempt to create
liability without negligence on the part of the master. *Ives*
v. *South Buffalo R. Co.* (1911), 201 N. Y. 271, 94 N. E. 431,
34 L. R. A. (N. S.) 162, Ann. Cas. 1912 B 156; *Ohio, etc.,
R. Co.* v. *Lackey* (1875), 78 Ill. 55, 20 Am. Rep. 259; *Zeig-
ler* v. *South, etc., R. Co.* (1877), 58 Ala. 594; *Birmingham,
etc., R. Co.* v. *Parsons* (1892), 100 Ala. 662, 13 South. 602,
27 L. R. A. 263, 46 Am. St. 92; *Bielenberg* v. *Montana, etc.
R. Co.* (1889), 8 Mont. 271, 20 Pac. 314, 2 L. R. A. 813; *Jen-
sen* v. *Union Pac. R. Co.* (1889), 6 Utah 253, 21 Pac. 994, 4
L. R. A. 724. So, too, we might have a different question
under §2 with respect to the provision removing the defense
of contributory negligence as to ''dangers or hazards inher-
ent, or apparent in the employment'', unless that clause be
regarded as removing the assumption of the risk or as neces-
sarily involving negligence, as being implied from the use
of the phrase contributory negligence, as it would seem that
there can be no contributory negligence on the part of the
servant, without negligence on the part of the master.
Beach, Contrib. Neg. (3d ed.) §7. The action is not
grounded on injury arising from dangers or hazards
inherent, or apparent in the employment. Nor was a de-
fense interposed on either of those grounds, but as to the
complaint and defense, both are grounded on the alleged
negligence of a fellow servant, a fellow brakeman. The
statute is bottomed on *negligence,* actual or implied, either
of omission or commission, but nevertheless *negligence,* of
imposed duties, either common law, or statutory.

The serious question in the case as applied to the statute,
centers in the classification of those who employ five or
more persons, as affected by provisions of the equal protec-
tion of the laws clause of the Federal and State Constitu-
tions. It cannot be denied that in drawing the line at em-
ployers of five or more persons, the statute is in some sense
arbitrary, but the question is, Is it so far purely arbitrary

as to be without any reasonable basis? Every statute is arbitrary in the sense that it is the legislative fiat, but with reference to classification, while it must have some reasonable basis upon which to rest, it is not essential that courts must be satisfied with the basis, or put negatively, unless the courts are satisfied that there can be no basis in reason, on which it can rest, they are not warranted in overthrowing it. In other words, it may not be stricken down where the court may not be informed as to the reasons which were before the legislature and impelled its action, and unless it appears from the act itself, or from matters of which courts will take judicial notice, that the act is in conflict with constitutional provisions, it must stand. *Pittsburgh, etc., R. Co.* v. *State* (1913), 180 Ind. 245, 102 N. E. 25, and cases cited; *State* v. *Barrett* (1909), 172 Ind. 169, 87 N. E. 7, and cases cited. The particular objection here urged is the restriction of the act to employers of five or more persons. The right and power of classification in proper cases is not denied, but it is urged that there can be no reason why it should apply to one class of employes, when the same business is carried on across the street, or next door in the same manner, and with the same machinery, operated in the same manner, and only four persons are employed. At first blush, it would appear to be without reason or just basis, or natural relation to all within the class (aside from merely arbitrary classification which is not allowable), or reason for the classification inhering in the subject-matter. More careful consideration may however make it doubtful at least whether there may not be some basis for it in reason, as related to the classes themselves, and also the subject-matter. If we regard the question from the point of view of the enormous business enterprises conducted under a single management, with hundreds or thousands of men employed, with high power, and ponderous machinery, there would seem to be some point between one servant, and some hundred or thousand, where a

line might be drawn. If that be true, the question becomes one of degree, and it could be as cogently and forcefully argued, that there is no difference in fact or principle, between cases of 100 men and 1,000 men, employed in the same class, and with the same machinery, as in case of five or more. It need hardly be suggested that there is necessarily more hazard among employes numbering 1,000 than in case of 100, and in a proportionately less degree, between five and a less number. They are removed by just so much as numbers, from the probability or possibility of knowing each other, their habits, care and caution, or recklessness and disregard of the safety of their necessary fellow employes. Where however does the line of less danger from such conditions fall? Where can the separation be made? If less than five are employed, there is of course more opportunity for the fellow servants knowing each other and their characteristics. There would of course be but little less opportunity if there were but six, but it is necessarily true that by so much as the number is decreased, by so much, or at least in some degree, is the danger from injury by the negligence of the fellow workman lessened, for if it is reduced to one, that danger entirely disappears, clearly demonstrating that the question of danger is one of *degree,* rather than one of kind or character, as applied to numbers of employes, except as there may be degrees of danger in differences in the employment, depending on the character of the work required and the agencies involved, such as electricity, high running machinery, and others. If a classification can be made at all, it is necessarily a legislative question, as to where the line is drawn, and the vital question is, Can it be drawn at all, so as to relieve one class, and bind another similarly situated and affected, with the single exception of the number of employes? If it stood as thus stated, we should be constrained to the view that it could not be upheld. But is the statement itself a correct one? Are the conditions the same, in case of five or more employes, as those

of four or less? Accurately speaking they are not; but are they so far, or so relatively near the same, that such classification is immaterial, unreasonable, and purely arbitrary? Are they in the same class when the conditions are considered? They may be in the same class of work, or employment, but there is necessarily some difference in the conditions of the work, depending on whether five or four are employed. In any case, it would be a relative difference, but is that enough to save the statute? Without attempting to set out the reasons assigned in decided cases upholding classifications based on numbers employed, it is sufficient to point out that in this State it has been upheld as to coal mines employing ten or more men. *Chandler Coal Co.* v. *Sams, supra.* It has been upheld also as to cities by population with respect to local government, though the difference consist only in a few less than the classification, and that too without regard to the size of the class. *Board, etc.* v. *Johnson* (1909), 173 Ind. 76, 89 N. E. 590, and cases cited.

In *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337, where the act could only apply to the city of Indianapolis, one of the grounds of the decision was that when and as a city would fall within the class, the act would apply to it. The point is applicable here. In *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 60 N. E. 943, 54 L. R. A. 787, the Employers Liability Act was held valid as extended so as to make the liability of railroads (by reason of the dangers) the same as to their servants, as to strangers, in respect of negligence of certain of their servants, charged with particular duties. It was said in the course of that opinion, "the legislature evidently considered that strangers and employes (the attorney and the ticket seller for example) who were not fellow servants of those in charge of the agencies named, were sufficiently protected by the railroad companies' existing liabilities to them for the negligent operation of those dangerous agencies; the legislature evidently determined to pro-

tect all persons who were not already protected from the negligent use of particular instruments; * * * a train is wrecked through the negligence of the engineer, two brakemen are injured without fault on their part, one acting at the time in obedience to the conductor's orders, the other acting on his own initiative within the line of his duty; there should be and there is no constitutional limitation upon the legislature's exercise of the police power by which a law may not be enacted to protect both brakemen equally from the negligence of the engineer." In a late case, *Quong Wing* v. *Kirkendall* (1912), 223 U. S. 59, 32 Sup. Ct. 192, 56 L. Ed. 350, it was held that a law exempting steam laundries and women engaged in the laundry business where not more than two women were employed, from a license imposed on all persons engaged in the laundry business, was not obnoxious to the equal protection clause of the Federal Constitution. In *Hayes* v. *Missouri* (1887), 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578, in a capital case, a statute was held not to be obnoxious to the equal protection clause of the Federal Constitution, which gave to the state fifteen peremptory challenges to jurors in cities of 100,000 or more inhabitants, while in the rest of the state the limit was eight. In *Erb* v. *Morasch* (1899), 177 U. S. 584, 20 Sup. Ct. 819, 44 L. Ed. 897, it was held that the exception of one interstate transit company from the general ordinance respecting speed of trains in a city was not violative of the equal protection clause, although in that case it is pointed out that there may be marked degrees of difference in the location of the tracks, and the physical conditions under which the trains are operated.

In *St. John* v. *New York* (1906), 201 U. S. 633, 26 Sup. Ct. 554, 50 L. Ed. 896, 5 Ann. Cas. 909, it was held that a statute making a distinction between producers, and nonproducers of milk, by which the latter were bound at their peril irrespective of their intention, to see that the milk sold by them is as it comes from the cow, was not an unlaw-

ful discrimination. It was there said, ''Not only the final purpose of the law must be considered, but the means of its administration—the ways it may be defeated. Legislation to be practical and efficient, must regard this special purpose as well as the ultimate purpose.'' It was held in *McLean* v. *Arkansas* (1909), 211 U. S. 539, 29 Sup. Ct. 206, 53 L. Ed. 315, in which many cases are reviewed, that the equal protection clause is not violated by a statute prohibiting miners from contracting for wages based on screened coal instead of by weight, as it comes from the mine, but exempting mines not employing ten or more men. So in *St. Louis Consolidated Coal Co.* v. *Illinois* (1901), 185 U. S. 203, 22 Sup. Ct. 616, 46 L. Ed. 872, a statute exempting coal mines from inspection in which less than five men are employed at any one time, was not in violation of the clause. It is there said, ''It is quite evident that a mine which is operated by only five men could scarcely have passed the experimental stage, or that precautions necessary in the operation of coal mines of ordinary magnitude would be required in such cases. There was clearly reasonable foundation for discrimination.'' In *Soon Hing* v. *Crowley* (1885), 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145, it was held a valid exercise of power to prohibit the carrying on of the laundry business within defined limits during certain hours, though other businesses were permitted to be carried on in the same district in those hours. A maximum elevator charge was upheld in *Budd* v. *New York* (1892), 143 U. S. 517, 12 Sup. Ct. 468, 36 L. Ed. 247, which excepted elevators in cities having less than 130,000 population.

A statute of Massachusetts requiring street railways to carry pupils to and from school, at not exceeding half the fare charged ordinary passengers, even though it did not apply to an elevated railway, was held valid as against an objection of denial of the equal protection of the law, as being a police regulation in the interest of education. *Commonwealth* v. *Interstate, etc., St. R. Co.* (1905), 187 Mass.

436, 73 N. E. 530, 11 L. R. A. (N. S.) 973, 2 Ann. Cas. 419. In *Williams* v. *Fears* (1900), 179 U. S. 270, 21 Sup. Ct. 128, 45 L. Ed. 186, equal protection of the laws was held not denied where an occupation tax was imposed on an agent hiring persons for labor *outside* the state, when it was not imposed on those performing the same service *in* the state. A statute providing for annexing lands to cities, but exempting lands for agricultural purposes, except when they are not owned by railroads, or other corporations, was held valid, where the land was occupied for railroad purposes. *Clark* v. *Kansas City* (1900), 176 U. S. 114, 20 Sup. Ct. 284, 44 L. Ed. 392. In that case quoting from *Atchison, etc., R. Co.* v. *Matthews* (1899), 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909, it is said, "Indeed, the very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality." In *Kirby* v. *Pennsylvania R. Co.* (1874), 76 Pa. St. 506, it was held that a statute was constitutional which provided that persons sustaining injury while lawfully engaged on or about roads, depots, etc., of a railroad company, or about any car or train therein or thereon, of which company the person is not an employe, shall have only the right of action that an employe has, was valid. In that case it was said, "The liability of the company for the acts or omissions of others, though they be servants, is only an offspring of the law. * * * The law which thus imputes it to the company, for reasons of public policy, can remove the imputation from the master and let it remain with the servant, whose negligence causes the injury." This is just the reverse of the proposition before us, for we here have the statute imputing a liability of the master from the negligence of the servant who causes the injury, as the policy declared in this State.

In *Milwaukee, etc., Co.* v. *City of Milwaukee* (1897), 95 Wis. 39, 69 N. W. 794, 36 L. R. A. 45, 60 Am. St. 81, it was held that a statute exempting the property of street rail-

ways from special assessments was valid, not only as to the property used by it for railway purposes, but all property owned by it.    In *McAunich* v. *Mississippi, etc., R. Co.* (1866), 20 Iowa 338, it was held in a case arising under the state constitution, that the number of citizens affected by a law does not control its validity, and if the law operates upon everyone within the relations or circumstances provided for, it is sufficient.    The case arose under constitutional provisions very similar to our own as to all laws being general, and of uniform operation, and denying the right to grant any privileges or immunities which shall not on the same terms belong to all citizens, and the act under which the case arose provided that "every railroad company shall be liable for all damages sustained by any person, including employes of the company, in consequence of any neglect of the agents, or by mismanagement of the engineer, or other employes of the corporation, to any person sustaining such damage." The act is in some respects similar to the one before us, and the case has been much cited.    The same rule applied in the United States courts, as to the equal protection clause and classification.    In *New York, etc., R. Co.* v. *New York* (1897), 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853, a statute with respect to heating cars, and other provisions, exempted railroads less than 50 miles in length, and it was held not a denial of the equal protection of the laws, on the ground which is the basis of all the cases, that the statute is uniform in its operation upon all the class to which it is made applicable.    *Booth* v. *State* (1913), 179 Ind. 405, 100 N. E. 563, and cases cited.

It was held in *American Sugar Refining Co.* v. *Louisiana* (1900), 179 U. S. 89, 21 Sup. Ct. 43, 45 L. Ed. 102, that the imposition of a license tax upon persons and corporations carrying on the business of refining sugar and molasses, from which planters and farmers making and refining their own sugar and molasses are excepted, does not deny equal protection of the laws to sugar refiners.    It was there said that

the act "does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle is valid. Of course, if such discrimination were purely arbitrary, oppressive or capricious, and made to depend upon differences of color, race, nativity, religious opinions, political affiliations or other considerations having no possible connection with the duties of citizens as taxpayers, such exemptions would be pure favoritism, and a denial of the equal protection of the laws, to the less favored classes." Counsel for appellant rely as to this point on the cases of *Yick Wo* v. *Hopkins* (1885), 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; *Cotting* v. *Kansas City, etc., Co.* (1901), 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; *Gulf, etc., R. Co.* v. *Ellis* (1897), 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; *Connolly* v. *Union Sewer Pipe Co.* (1901), 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; *Dixon* v. *Poe* (1902), 159 Ind. 492, 65 N. E. 518, 60 L. R. A. 308, 95 Am. St. 309; *Street* v. *Varney Electrical Supply Co.* (1903), 160 Ind. 338, 66 N. E. 895, 61 L. R. A. 154, 98 Am. St. 325; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529, 14 L. R. A. (N. S.) 418; *People, ex rel.* v. *Butler St. Foundry, etc., Co.* (1903), 201 Ill. 236, 66 N. E. 349. It is to be observed that *Yick Wo* v. *Hopkins, supra,* is based on the ground that the ordinance in question granted arbitrary power at their own will to the officers, without regard to any discretion in the legal sense of the term, to give or withhold assent as to persons or places, without regard to persons or places, or competency, or the propriety of the place selected for carrying on business. In *Cotting* v. *Kansas City, etc., Co., supra,* the statute was stricken down because it did not attempt to define a class, but defined conditions which could only apply to one corporation, and not to others engaged in the like business. In *Gulf, etc., R. Co.* v. *Ellis, supra,* a statute attempted to charge railroad companies with a

fixed attorney fee, for failure to pay certain classes of
*bona fide* claimants, and was held invalid as singling out
railroads from all other persons or corporations similarly
situated, who were exempt from such charge, that is, its
object was to punish for failure to pay debts of the classes
named. Many cases are there collected and reviewed. The
court was divided, but the prevailing opinion travels upon
the theory that the statute had no just or proper relation
to the attempted classification, and the mere fact of classi-
fication is not sufficient. In *Connolly* v. *Union Sewer Pipe
Co., supra,* was considered a statute arising under the
Illinois trust act, which contained an exemption of ''agri-
cultural products, or live stock in the hands of the producer
or raiser.'' The case is a carefully considered one, in
which a number of cases herein reviewed by us, are there
reviewed, and distinctions sought to be pointed out between
laws respecting taxation, and purely police regulations, and
the clause above quoted held invalid. It is there said, on
page 559, among other things, ''What may be regarded as
a denial of the equal protection of the laws is a question
not always easily determined. * * * It is sometimes
difficult to show that a state enactment, having its source
in a power not controverted, infringes rights protected by
the national constitution. No rule can be formulated that
will cover every case. But upon the general question, we
have said that the guarantee of the equal protection of the
law, means, 'that no person or class of persons shall be
denied the same protection of the laws, which is enjoyed
by other persons or other classes in the same place, and in
like circumstances'. * * * 'That the equal protection
of the laws is a pledge of the protection of equal laws';
* * * that all persons subject to legislation limited as to
the objects to which it is directed, or by the territory within
which it is to operate, 'shall be treated alike, under like
circumstances and considerations, both in the privileges con-
ferred, and in the limitations imposed'. Due process of

law and the equal protection of the laws  *  *  *  are secured, if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government.'' The reasoning of that case has much to cast doubt on, if not to enforce the conclusion, that the statute before us is invalid. There is however this marked distinction running through all the cases, that is, that a statute is not obnoxious to the constitutional provisions, if all are treated alike who are in like circumstances, or conditioned alike. *Dixon* v. *Poe, supra,* travels upon the same theory as the Connolly case, as does also *Street* v. *Varney Electrical Supply Co., supra,* except in those cases, it is a question of contract rights, and discrimination as to both employer and employe. In the Street case, is the further question of discrimination as against the state, and its political subdivisions, and against cities and towns which in their economic concerns, are voluntary private corporations. In *Bedford Quarries Co.* v. *Bough, supra,* the act was held valid as to railroads, on account of the hazards of the business, as applied to the operation of railroads, but held invalid as to other corporations, because imposing burdens on them not imposed on individuals or partnerships engaged in similar businesses. That too was an employers liability act, creating a liability contrary to the prior rule, which is also embodied in the act before us, by reason of injury from negligence, of any person to whose order the injured person is required to conform, and does conform. These Indiana cases, if the case before us falls within them, would be decisive of the case. In *People, ex rel.* v. *Butler St. Foundry, etc., Co., supra,* an act applying to corporations other than building and loan associations was held valid, which covered the question of combinations for raising or maintaining wages, and as not being in conflict with the Connolly case, and as in line with *St. Louis Consolidated Coal Co.* v. *Illinois, supra.* Laying aside the cases which are grounded upon the taxing power, it cannot be doubted that the line of

demarcation between such laws as come within the police power, and those which do not, is often shadowy. As examples of this kind are the fire escape laws. Whilst primarily enacted under the police power, they are held not to be local, and not to operate ununiformly, or special as applied to buildings of more than a certain number of stories. *Arms* v. *Ayer* (1901), 192 Ill. 601, 58 L. R. A. 277, 85 Am. St. 357. It is there said, quoting from *People, ex rel.* v. *Wright* (1873), 70 Ill. 388, ''laws are general and uniform, not because they operate upon every person in the state, for they do not, but because every person who is brought within the relations and circumstances provided for, is affected by the laws. They are general, and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform, is not affected by the *number* of those within the scope of their operation,'' and that it is sufficient under that provision of the constitution which prohibits local or special legislation, if the law applies to all subjects of the same class or *degree*. *Potwin* v. *Johnson* (1883), 108 Ill. 70. It was held in *Strange* v. *Board, etc.* (1909), 173 Ind. 640, 91 N. E. 242, that the act respecting the improvement of highways in townships in which there is no city or town of 30,000 inhabitants, is not class legislation, though properly referable to the taxing power.

The question resolves itself into the proposition under the broadest views of the case, whether the classification made by the statute here involved rests upon some material or substantial basis, and operates upon all alike within the class. As to the last question, the answer depends upon what is meant by all within the class. Does it mean all within the class which the statute affects, or must it include also those outside that class, who may be similarly employed, or situate as employers? It appears to us to mean the former only, for the reason that the statute itself recognizes differences in degrees of danger, based on numbers employed, and bases its application on those differences, and it seems

to be a natural, and substantial basis, as related to the object sought, owing to the question of *degree*. In *Aluminum Co.* v. *Ramsey* (1911), 222 U. S. 251, 32 Sup. Ct. 76, 56 L. Ed. 185, it was held that if the classification is proper, and there is equality in the class, the statute is not repugnant to the Constitution. This rule was applied as between mines operating railroads, and individuals, in respect of an employers liability act. The same rule was applied in *Mobile, etc., R. Co.* v. *Turnipseed* (1910), 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912 A 463, as applied to all employes of railroads, and not only to those engaged in the operation of trains. We have had occasion to advert to that decision in a recent case, *Richey* v. *Cleveland, etc., R. Co.* (1911), 176 Ind. 542, 96 N. E. 694, 47 L. R. A. (N. S.) 121. In *Louisville, etc., R. Co.* v. *Melton* (1910), 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, it was held that the equal protection clause is not offended against because as the result of the exercise of the power, some inequality may be occasioned. "That is to say, as the power to classify is not taken away by the operation of the equal protection of the law clause, a wide scope of legislative discretion may be exercised in classifying, without conflicting with the constitutional prohibition." This case arose under the Employers Liability Act of Indiana, as to employes on railroads, other than those engaged in the direct operation of trains. The decision was based upon the ground that the equal protection clause, if carried to its last analysis, would permit classification, if it could be done *only* upon grounds of general distinction obtaining between persons and things, however apparent the distinction may be, but must legislate upon minute distinctions which may arise from accidental circumstances of persons or things coming within the general class. "This follows since the necessary consequence of the argument is to virtually challenge the legislative power to classify and the numerous decisions upholding that

authority. To this destructive end it is apparent the argument must come, since it assumes that however completely a classification may be justified by general considerations, such classification may not be made if inequalities be detected as to some persons embraced within the general class by a critical analysis of the relation of the persons or things otherwise embraced within the general class.'' We pointed out in the Richey case, with respect to this case, that it goes farther than we could go under our own Constitution, but the reasoning applies here to the subject of classification, as applied to the equal protection clauses.

In *Welch* v. *Swasey* (1909), 214 U. S. 91, 29 Sup. Ct. 567, 53 L. Ed. 923, a statute prescribing different heights of buildings in different portions of a city, was held not to deny equal protection of the laws in the district where the lesser heights were permissible. It was there held that the objects to be accomplished were to be considered, and whether they had a substantial relation to a public adjunct of government. The opinion may be regarded as traveling somewhat under the police power, thus demonstrating how the latter may shade into the general power of legislation.

As suggested, there must be degrees of danger between one and 1,000 employes, and if so, there must be the power to classify somewhere between those, or greater or less numbers, and if so, can this court say that it is unreasonable to place it at five? Exercising our individual judgment, we might not make any distinction, but unless we can say that five is unreasonable, or that every employer of one person and up, must be put in the same class, in order to render the act valid, we have no right to interpose our judicial opinion as to its propriety or wisdom, and in its last analysis, it comes to the question of classification, or no classification, where the question is one of degree, (though it is also one of kind or character of employment, but not of employers) depending on the number employed. The character of the employment, and not the character of the employer, must

be the true test, and the character of the employment is here made to depend upon the number of employes, a. question of *degree*, and whether that may be one of large, or small degree as the test, is not different in principle from the question whether the class be large or small. *Smith* v. *Stephens* (1910), 173 Ind. 564, 91 N. E. 167; *Board, etc.* v. *Johnson* (1909), 173 Ind. 76, 89 N. E. 590, and cases cited. In the latter case, we held that as applied to taxation, the law must be based upon some natural reasons inhering in the subject-matter, precisely as the rule is, as respects classification generally, but that the equal protection of the laws in taxation is not denied because discrimination results. It cannot be doubted that this statute does result in discrimination against employers of five or more persons, but it is a relative discrimination, depending on the greater or less degree of danger, as the employer recedes from, or comes nearer the employment of five persons. Is the case distinguishable in principle from *Bedford Quarries Co.* v. *Bough, supra,* and the cases on which it is based, including *Cleveland, etc., R. Co.* v. *Foland* (1910), 174 Ind. 411, 91 N. E. 594, 92 N. E. 185; and *Richey* v. *Cleveland, etc., R. Co., supra?* If the statute can be said to be arbitrary, is it so as depending on the character of the employer, and not on the character of the employment, and what do those terms mean, for definition here becomes of the greatest consequence? It does not depend on the character of the employer, because that is immaterial under the act, or as to the work itself, but does depend on the number employed, and in that particular, on the character of the employment; that is, one in which five or more persons are employed, as against less than five, and therefore the conditions are not the same. We have distinctive classifications, such as the school age, the age of employment of minors in various pursuits, the age of consent in females, by arbitrary statutes, fixing the age limit, and in such cases one day less than the age fixed bears as much natural relation to those falling within the

class one day later, as in the case before us.  Granted that these are in the nature of police regulations, yet when we regard the limit here fixed and the objects, it has some relation to the police power, for it is necessarily true that even one less employe, by so much, lessens danger of injury from a fellow servant.  Granted also, that the distinction may be a narrow one, or finely drawn, that only emphasizes the fact that that makes it all the more difficult for a court, in view of such fine distinction, to say that it may not be so drawn, and at least raise a doubt whether it is invalid.  This statute it seems to us, is in a different category from the former Employers Liability Act and cases under it, in the one particular at least, that it operates upon conditions which by reason of *numbers*, are not, and cannot be the same, though the relation should be close, but which will be the same in case the number is reached, in analogy to classification by population, in addition to the fact, that there is a natural relation of increase of danger from mere numbers, even though there should seem to be some inequality between so small a difference as between four and five, but that is an inseparable incident of the power of classification.

It is contended that the provision of §3 respecting the employe not assuming the risk of the place, or the tool or implement furnished him, is discriminatory in that the employer of less than five is not required to exercise the degree of diligence that is exacted of the employer of five or more men.  We think counsel are mistaken in this particular.  At common law, it was and is the master's duty to furnish, or exercise ordinary care to see that the tool, implement or place of work is reasonably safe.  That rule still obtains in all its vigor as to all employers, by the express provisions of §1.  The act therefore adds no obligation to any employer whether of five, or more, or less persons, but it does take away the assumption of risk, and changes the burden of proof.  It is argued by way of illus-

tration, that the keeper of a boarding house employing five
or more servants would be liable under the act, when the
head of a household, employing the same number or more,
would not be, owing to the restrictions of the act to those
engaged in "business, trade or commerce," and that unfair
and unjust discrimination is made. On first thought it
would appear so, but on mature reflection several considera-
tions intrude themselves: (1) That in case of the mere serv-
ice of house work, the service is not employed for profit;
(2) the number usually employed in house service would so
infrequently reach five, as to be a negligible factor in a
general rule of law; (3) the conditions of service are gen-
erally such in a household, as to present the minimum of
danger from the act of a fellow servant, owing to its neces-
sarily separate and discriminate character. However, the
argument is not without force, as based on the character of
the employer, whether engaged in "business, trade or com-
merce," though there is doubtless room for its application
in the character of the employment itself; and as between
those not engaged in "business, trade or commerce," and
those who are, the classification is by the character of the
employment, that is, it is determined by businesses or occu-
pations for profit or livelihood, and those which are not,
and there may be some reason in that distinction, either on
grounds of public policy, or on the ground of the employer
deriving direct benefit from the services of the servant. It
has been recently held that the equal protection of the law
is not violated by a statute prohibiting the employment of
persons under sixteen years of age even though there is a
representation of being over that age, and that it was not a
question of good faith, in the employer, and that the classifi-
cation at the age of sixteen years was clearly within the leg-
islative power. *Sturges, etc., Mfg. Co.* v. *Beauchamp*
(1913), 231 U. S. 320, 34 Sup. Ct. 60, 58 L. Ed. ——, and
cases cited; see also, *Inland Steel Co.* v. *Yedinak* (1909), 172
Ind. 423, 87 N. E. 229, 139 Am. St. 389. These of course

were classifications for protection of young persons, but they bear some analogy to the classification here, in which the purpose is to remove assumption of risk and contributory negligence as defenses, as well as to change the burden of proof in cases falling within the act, and there is some analogy between protection of young persons, and protec· tion of persons by reason of numbers employed, and such classification bears some relation to the object sought. It may also shade into a police regulation, but it is also the enunciation of a public policy which is its primary and controlling object. See, also, *City of Chicago* v. *Sturges* (1911), 222 U. S. 313, 32 Sup. Ct. 92, 56 L. Ed. 215, Ann. Cas. 1913 B 1349; *Murphy* v. *California* (1912), 225 U. S. 623, 32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153; *Finley* v. *California* (1911), 222 U. S. 28, 32 Sup. Ct. 13, 56 L. Ed. 75; *Chesapeake, etc., R. Co.* v. *Conley* (1913), 230 U. S. 513, 33 Sup. Ct. 985, 57 L. Ed. 1597; *Chicago, etc., Canal Co.* v. *Faley* (1913), 228 U. S. 680, 33 Sup. Ct. 715, 57 L. Ed. 1022; *Metropolis Theatre Co* v. *Chicago* (1913), 228 U. S. 61, 33 Sup. Ct. 441, 57 L. Ed. 730; *Toyota* v. *Hawaii* (1912), 226 U. S. 184, 33 Sup. Ct. 47, 57 L. Ed. 180; *Citizens Tel. Co.* v. *Fuller* (1913), 229 U. S. 322, 33 Sup. Ct. 833, 57 L. Ed. 1206; *Denver* v. *New York Trust Co.* (1913), 229 U. S. 123, 33 Sup. Ct. 657, 57 L. Ed. 1101; *Central Lumber Co.* v. *South Dakota* (1912), 226 U. S. 157, 33 Sup. Ct. 66, 57 L. Ed. 164. In view of our own holding in *Chandler Coal Co.* v. *Sams, supra,* and that in other jurisdictions, as pointed out, there is at least such doubt as to whether the act is unconstitutional, as to require that doubt to be resolved in its favor, as to the question here urged.

It is next urged that the act does not apply to railroads for the reason that they are not engaged in "business, trade or commerce," in the language of the act. Business 7. is defined as that which occupies the time, attention or labor, of men for the purposes of profit or improvement, as their principal concern. *Trustees of Columbia*

*College* v. *Lynch* (1874), 47 How. Pr. (N. Y.) 273; *Territory* v. *Harris* (1888), 8 Mont. 140, 19 Pac. 286; *Hickey* v. *Taaffe* (1885), 99 N. Y. 204, 1 N. E. 685, 52 Am. Rep. 19; *City of New Orleans* v. *New Orleans, etc., R. Co.* (1888), 40 La. Ann. 587, 4 South. 512; *Goddard* v. *Chaffe* (1861), 84 Mass. 395, 79 Am. Dec. 796; *In re Elmira Steel Co.* (1901), 109 Fed. 456; *Shryock & Rowland* v. *Latimer* (1882), 57 Tex. 674; *Barwell* v. *The Hundred of Winterstoke* (1850), 14 Q. B. (Com. L. R.) *704. Commerce is defined as traffic and something more, it is intercourse, transportation, and the latter is commerce itself. *Gibbons* v. *Ogden* (1824), 22 U. S. *1, 6 L. Ed. 23; *Lehigh, etc., Coal Co.* v. *Carrigan* (1876), 39 N. J. L. 35. It includes not merely traffic, but the means and vehicles by which it is accomplished. *Winder* v. *Caldwell* (1852), 55 U. S. *434, 14 L. Ed. 487; *Trade Mark Cases* (1879), 100 U. S. 82, 25 L. Ed. 550. As used in the Federal Constitution, it, of course, applies to relations between citizens of different states, foreign nations, and the Indian tribes, and is broad enough to embrace intrastate traffic, and transportation, as well. We have no difficulty in determining that the statute embraces railroads.

The argument is that the legislature must have known that there was already an act in force since 1893 fixing the liability of railroads, it could not have had railroads in mind in the act of 1911. The history of construction under the act of 1893, by which it was limited to railroads, and to those subject to the hazards from the operation of trains, doubtless furnished the grounds for covering the whole subject in one act, and as supplemental to the existing laws and decisions not in direct conflict with it, and perforce, attempts at least, to bring all employers of five or more persons within the classification and rules applicable to them. We cannot overlook the contemporaneous history, in which the justice of such classification as to others, as well as railroads has been insisted upon.

Section 7 of the act is attacked as depriving courts of judi-

cial functions.  There is no question in this case but that there is a conflict of the evidence as to the negligence 8. of the engineer, under the first paragraph, and it was a question for the jury, and no question of liability under the second paragraph, if the act is valid, as to the removal of nonliability from the act of a fellow servant, so that the validity of §7 is not involved in this case, unless it is so interwoven with the other sections that they are incapable of severance, and as to that point there can be no question, as it is entirely severable from the other sections of the act involved, and we therefore pass the question.

There was evidence in this case from which the jury was warranted in inferring and finding negligence on the part of the engineer under the allegations of the first para-9. graph of the complaint.  Under these conditions the court charged the jury as follows, "In this case the defendant is a corporation, and hence cannot discharge in person the obligation it owes its employes to furnish them reasonably safe places to work, and appliances with which to work, but must provide some agent to take its place, and the person or agent to whom it delegates this duty, no matter what his grade or rank may be, stands in the place and stead of the defendant company."  Complaint is made of this instruction because in neither paragraph of the complaint is there any allegation of failure of duty to furnish the plaintiff a reasonably safe place to work, or appliances with which to work, and hence there was no issue to which it could be applicable, and therefore a harmful error.  Under the allegations of the first paragraph, and on the evidence, if appellee's injury arose from the negligence of the enginer in backing the cars, so that the place where he was required to be in the line of his duty, became unsafe, it was the engineer's act which made it unsafe.  Under the allegations of the second paragraph, if as alleged, he was where his duty required him to be, and he was injured by a negligent order to which he was required to, and did conform,

Vandalia R. Co. *v.* Stillwell—181 Ind. 267.

the place became unsafe by reason of the order, and in either event it became unsafe by reason of the act or the order, and it was negligence in one case or the other, which rendered the place unsafe. The injury did not arise from the changing conditions of the work, but from negligence in the manner of doing it. Under the first paragraph, the jury was instructed that he could not recover unless the evidence showed that he was guilty of no negligence, and under the second paragraph he neither assumed the risk nor was responsible for contributory negligence, from the dangers or hazards apparent or inherent in the employment, or from obedience to the order of the brakeman whose order he was required to and did obey. If the instruction goes further than to declare an abstract proposition of law, as to agency for corporations, and goes to the extent of intimating liability from an unsafe place to work, made so by the act of the agent whose duty it was to guard him from danger, or at least not to make it dangerous, from his act or order, it is still the negligence of one or the other which produced the injury, and not the place of work. Taken with the other instructions in the case, we cannot see that the jury could be misled by this instruction.

The judgment is affirmed.

NOTE.—Reported in 104 N. E. 289. See, also, under (1) 26 Cyc. 1079, 1180, 1360; (2) 8 Cyc. 801; (3) 26 Cyc. 978-980; (4) 8 Cyc. 1051; (5) 8 Cyc. 1058; (7) 6 Cyc. 259; 7 Cyc. 412; (8) 8 Cyc. 798; (9) 26 Cyc. 1491. As to who are vice principals, see 41 Am. St. 94; 75 Am. St. 584. As to the constitutionality, application and effect of Federal employers' liability act, see 47 L. R. A. (N. S.) 38. On the retroactive effect of statutes relative to employers' liability for injuries to servants, see 44 L. R. A. (N. S.) 841.